## SALT LAKE CITY v. ROBINSON.

No. 2266. Decided March 18, 1912 (125 Pac. 657).

1. INTOXICATING LIQUORS—SALE WITHOUT LICENSE—BURDEN OF
   PROOF. The burden is on one charged with selling intoxi-
   cants without a license to show that he had a license to sell.[1]
   (Page 451.)

2. CRIMINAL LAW—ILLEGAL SALES OF LIQUOR—ESTOPPEL TO CONVICT.
   Two police officers went into accused's drug store and one of
   them asked for lemonade with a "stick" in it and received
   lemonade with whisky in it, and also purchased three bottles
   of beer, paying with money procured from the police funds
   of the city, after which they arrested accused for selling intox-
   icants without a license. *Held*, that the city was not estopped
   by public policy or otherwise from prosecuting accused for
   selling intoxicants without a license on the ground that the
   officers induced the commission of the offense. (Page 455.)

3. CRIMINAL LAW—EVIDENCE—SUFFICIENCY. A conviction is not
   necessarily illegal merely because some of the witnesses for
   the prosecution were paid for gathering evidence against ac-
   cused; the court having some discretion in determining wheth-
   er a conviction based on such evidence should stand. (Page
   457.)

4. CRIMINAL LAW—INSTRUCTIONS—CHARACTER OF EVIDENCE. In a
   prosecution for selling intoxicants without a license in which
   police officers testified without contradiction that they pur-
   chased intoxicants from accused, there was no abuse of dis-
   cretion in refusing a requested charge that the testimony of
   witnesses who were interested in or employed to find evidence
   against accused should be received with the greatest caution
   and distrust. (Page 457.)

5. CRIMINAL LAW—HARMLESS ERROR. Any error in a prosecution
   for selling intoxicants without a license, in which police offi-
   cers testified without contradiction that they purchased intox-
   icants from accused, in refusing a requested charge that the
   testimony of witnesses employed to find evidence against ac-
   cused should be received with the greatest caution
   and distrust, was not prejudicial where the jury could not
   legally have acquitted accused under the evidence. (Page 459.)

[1] State v. Wells, 35 Utah, 400, 100 Pac. 681, 136 Am. St. Rep.
1059, 19 Ann. Cas. 631; Wilkinson v. O. S. L. R. Co., 35 Utah, 110,
99 Pac. 466.

6. CRIMINAL LAW—INSTRUCTIONS—REASONABLE DOUBT. The court instructed that if, after due consideration of the whole case and discussion thereof with other jurors, any juror entertains a reasonable doubt of guilt it is the duty of such juror not to vote for a verdict of guilty nor to be influenced in so voting for the sole reason that other jurors would be in favor of a verdict of guilty. *Held*, that the instruction was not erroneous as permitting a juror who entertained a reasonable doubt to still vote guilty because other jurors do so provided he find some additional reason for so voting, such as that he may believe accused "may" be guilty, so that it was not error to refuse a requested charge that if any one of the jurors entertained a reasonable doubt of guilt they could not convict. (Page 459.)

STRAUP, J., dissenting.

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

L. P. Robinson was convicted of selling intoxicants without a license. He appeals.

AFFIRMED.

*S. P. Armstrong* and *J. E. Darmer* for appellant.

*H. J. Dininny* and *P. J. Daly* for respondent.

FRICK, C. J.

The appellant was charged in the criminal division of the city court of Salt Lake City with having sold intoxicating liquors within the city of Salt Lake without obtaining a license to do so. He was convicted in said court, appealed to the district court of Salt Lake County where he was again convicted, and he now presents the record containing the proceedings of his last conviction to this court on appeal.

The only evidence heard at the trial was produced by the city, which is to the effect that one Herman Bauer, who was the private secretary of the chief of police of Salt Lake City, and who was clothed with the powers of an ordinary policeman, and one J. E. Woodward, also a police officer,

went into the appellant's drug store in Salt Lake City; that they went there for the express purpose of obtaining evidence that he was selling intoxicating liquors in his place of business; that they knew at the time that appellant had no license from the city to sell such liquors; that they went into appellant's place of business and Mr. Bauer called for lemonade with a "stick" in it and Mr. Woodward asked for a glass of coca cola; that when Mr. Bauer asked appellant to put a "stick" in his lemonade appellant seemed to know just what Mr. Bauer wanted and put whisky in it; that, after drinking the lemonade and coca cola purchased as aforesaid, Mr. Woodward called for and received three bottles of lager beer which appellant produced from a back room in his store; that Mr. Woodward paid appellant one dollar for the drinks and three bottles of beer, including two cigars, and got back twenty cents in change from him; that after having purchased said drinks and the beer, and after having paid therefor as aforesaid, they, as public police officers of Salt Lake City, arrested the appellant and took him and the beer to the police station where a complaint charging him with selling intoxicating liquors without a license was lodged against him, and on which he was subsequently tried and convicted as aforesaid. It was also made to appear upon the cross-examination of the two police officers that, while Mr. Woodward paid for the cigars, the drinks, and the beer out of his own money, he was subsequently reimbursed, but the source from whence the money out of which he was reimbursed was derived was left in doubt. For the purpose of this decision we shall assume that the fund from which Mr. Woodward was reimbursed was the contingent fund of the chief of police of Salt Lake City. The three bottles, two with their contents intact, were produced in evidence. The city did not prove that appellant had not obtained a license to sell intoxicating liquors, although the ordinance prohibiting the sale of such liquors without first obtaining a license from the city was produced in evidence.

Upon substantially the foregoing facts the appellant requested the court to charge the jury to return a verdict of not guilty. This request was based upon the theory that, since the city had failed to prove that appellant did not have a license to sell intoxicating liquors, it had failed to prove that the sale in question was illegal. The court refused the request and in substance charged the jury that the burden of proving that appellant had a license was cast upon him, and in view that he had failed to produce any evidence upon that subject the jury must assume that he had no license authorizing the sale in question. Appellant's counsel vigorously insists that the court erred both in refusing his request and in charging the jury that the burden of proof with regard to whether appellant had a license or not was cast upon him. Counsel has cited some respectable authorities which sustain his contention. The overwhelming weight of modern authority, in the absence of an express statute to the contrary, is, however, in accordance with the rule adopted by the trial court in the instruction complained of.

The author of Black on Intoxicating Liquors, after referring to the decisions which hold that the burden of proving that the sale in question was without a license is upon the prosecution, says:

"But these decisions are exceptional. The rule established by the vast preponderance of authority is that, in cases where a license to sell, if produced and relied on, would constitute a complete defense to the action, the prosecution is not bound to produce any evidence in support of the negative allegation that the sale was made without license, but on the contrary the defendant must assume the burden of proving that he was duly licensed." Black, Intox. Liq., sec. 507.

In a recent work (1910) entitled, "The Law of Intoxicating Liquors by Woolen & Thornton," the authors, in discussing the question of the burden of proof, in volume 2, sec. 947, state the rule in the following language:

"In all cases, therefore, of a sale without a license, the prosecution need not prove it was made without a license, but the burden is upon the defendant to show it was authorized by a license he had at the time the sale was made."

Joyce on Intoxicating Liquors, sec. 686, says:

"Where the possession by the defendant of a license or authorization would be a defense to the act alleged to be criminal upon his part, the burden of proof rests upon him to show that he possesses the same."

In 23 Cyc. 247, the prevailing rule is stated thus:

"In cases where a license to sell is relied on as a defense to the prosecution, the government is not bound to produce any evidence in support of the negative allegation that the sale was made without license, but on the contrary defendant must assume the burden of proving that he was duly licensed."

In support of the foregoing text, decisions from the courts of last resort of twenty-five states, and also decisions from the Supreme Court of the United States, are cited. In a few of the states mentioned, notably Massachusetts, Kansas, and Texas, and perhaps a few others, the subject is regulated by statute. In two of the states a contrary rule had been adopted by the courts, and the legislatures promptly passed statutes fixing the rule in accordance with the great weight of authority. But even in those states the courts conceded that, independent of any statute, the rule was a reasonable and a practicable one. See *State v. Crow,* 53 Kan. 662, 37 Pac. 170.

In 17 A. & E. Ency. L. (2 Ed.) 330, the rule is stated in the following language:

"Although there are a few decisions which maintain a contrary doctrine, the rule is settled by the weight of authority that, where a license or permit to sell intoxicating liquors would be a defense to a prosecution for a violation of the liquor laws, the burden is on the defendant to show that he has such license or permit, and not on the state to show that he is without it."

In referring to the rule in 7 Ency. Ev. 726, it is said:

"Where a valid license is a defense to a prosecution, or its nonexistence is an essential element of the crime charged, the rule generally obtains that the burden is upon the defendant to establish the existence of the license."

The author of Underhill on Criminal Evidence, after discussing upon whom rests the burden of proving a negative, at page 33 states the rule as follows:

"But if a fact is peculiarly within the knowledge of the ac-cused, as for example his own age when he pleads nonage as a defense, or the fact that he has a license to carry on a prohibited business or to do a forbidden act, the burden of proof is on him as he has much better means of proving the fact alleged than the prosecution has of proving the contrary. The matter is peculiarly within his knowledge and to require the state to prove the lack of a license is to require proof of a negative allegation."

In 4 Elliott on Evidence, sec. 3170, the author, after showing that the courts are somewhat divided upon the question, says:

"It is now settled, however, in most jurisdictions, either by statute or judicial decision, in the absence of any express statutory provision upon the subject, that the burden is upon the defendant to show his license or authority as a defense."

See, also, Jones on Evidence (2 Ed.), sec. 181; 2 Chamberlayne, Modern Law of Ev., sec. 983.

From the foregoing excerpts it is manifest that the great weight of authority supports the law as it is stated by the trial court in the instruction of which complaint is made. It is also clear that the rule is generally applicable to those cases where an act, especially the sale of some article, is prohibited unless licensed, and where the production of such license would be a complete defense to the prosecution. If the defendant in this case had produced a license to sell intoxicating liquors within the limits of Salt Lake City, the prosecution must have failed, and hence this case falls squarely within the rule announced by the foregoing authorities. Moreover, the rule is as practicable as it is general, and we can conceive of no case where its application could work a hardship or even an inconvenience, much less result in injustice to any one who is engaged in the traffic of intoxicating liquors, whether licensed or unlicensed.

It is, however, asserted that we are committed to a contrary principle by what is said in *State v. Wells,* 35 Utah, 400, 100 Pac. 681, 136 Am. St. Rep. 1059, 19 Ann. Cas.

631, which was a prosecution under Comp. Laws 1907, sec. 4226, in which the administering of drugs or the use of instruments for the purpose of producing a miscarriage of a pregnant woman except to preserve her life is denounced and made a felony. It is true that in that case we, in harmony with the weight of authority, held that in prosecutions based upon statutes like the one just referred to the state must produce some evidence direct or inferential that the miscarriage was not produced in order to preserve the life of the woman. While it is also true that in that case the proposition of proving a negative by the state was to some extent at least involved, yet the question of a license was not involved. If in that case the production of a license by the accused would have been a complete defense to the prosecution or to the act charged, and the overwhelming weight of authority were to the effect that the burden of proof rested on the accused to produce such license, the result of that case, in the judgment of the writer, would have been entirely different.

Again, it is asserted that in the case of *Wilkinson v. O. S. L. R. Co.*, 35 Utah, 110, 99 Pac. 466, we in effect laid down a contrary doctrine to what we are now doing. It is sufficient to say that the principle applied in that case is one of universal application, namely, that where the question of negligence is involved, negligence will not be presumed but must be proved. The most that can be said, therefore, is that there appears to be an inconsistency between the rule adopted in this case and the one in the Wells Case. This inconsistency, if not entirely assumed, nevertheless for the reasons already given is more apparent than real. Furthermore, in order to avoid this assumed inconsistency, we are asked to adopt a rule in this state which is contrary to the one that is generally applied by the great majority of the courts in this country and which in practice is found to be just, fair, and practicable. We do not feel disposed to place this court in opposition to the general trend of authority upon this subject where nothing is accomplished except to reconcile an apparent inconsistency,

and especially where a rule is sought to be adopted that could benefit no one. We are of the opinion, therefore, that the rule adopted by the trial court should prevail.

The next assignment is stated in the following language:

"The court erred in holding that the city is not estopped by its acts in soliciting and procuring the defendant to sell the liquor in question."

Counsel contends that the two police officers to whom the sale was made represented the city that is here prosecuting; that the sale in question would not have been made if the officers had not solicited it; and hence the offense alleged was induced by the officers. It is contended that under such circumstances the general rule is that the prosecutor is either estopped from asking a conviction or public policy prevents one. It would subserve no good purpose to discuss the reasons for the rule contended for by counsel, since we are clearly of the opinion that it has no application to the undisputed facts in this case. The alleged offense in question here, namely, the sale of the intoxicating liquor, was not induced or procured in the sense that those terms are generally used and applied. While it may be conceded that the particular sale in question here would not have been made if the two officers had not asked to purchase the liquor, yet in view of the facts and circumstances the appellant was no more induced to make this sale than he would be induced to make any sale in his place of business. Moreover, the sale in question was seemingly only one of many that appellant was prepared to make. When the intoxicating liquor was called for by the officers, appellant seemed to have a stock of it on hand from which he could supply any reasonable demand. In case the officers had called for intoxicating liquor and had been informed by appellant that he did not have it for sale, or that he did not keep it in stock, and in such event they had induced him to obtain some for them from some one else, which he did, and after it was so procured upon their solicitation he had sold them what he had procured, the case would be different. Here, however, the

sale was freely and voluntarily made from a supply which apparently was on hand in appellant's store and which could have been kept on hand only for the purpose of making sales to those who desired to purchase. While it is true that one sale constitutes the offense, yet it is clear that it was not the purpose of the officers to induce the appellant to make a sale for the sole purpose of convicting him of making that sale, but it seems their object was to obtain evidence from which it was made manifest that appellant was engaged in the illegal traffic of intoxicating liquors and that they desired to break up such traffic. As public officers who under their oaths were required to enforce the ordinances of the city, we cannot see wherein they offended against public policy or against good morals in seeking to obtain evidence against a willing offender against the law for the purposes aforesaid. No doubt if public officers have induced or procured a defendant to commit a burglary or larceny or other offense which he did not intend to commit nor would have committed except for the inducement of such officer, public policy will not justify a conviction for an offense committed under such circumstanes. But suppose it is an offense to carry concealed weapons or to have burglar's tools in one's possession and an officer, in order to obtain evidence of the fact, induced the supposed offender to exhibit the weapon or tools to such officer for the purpose aforesaid, is there any public policy that will prevent a conviction of the offender under such circumstances? We think no one will contend for such a doctrine, and yet the inducement in the case at bar is in principle no different from the inducement in the supposed case of concealed weapons. Convictions obtained under circumstances like those in the case at bar have frequently, if not universally, been sustained by the courts. The rule under which prosecutions will be sustained is well stated in 2 Woollen & Thornton, Law of Intoxicating Liquors, sec. 707, where a large number of cases are collated in support of the rule there stated.

We think the true doctrine applicable here is clearly pointed out in a recent case entitled *People v. Bunkers,* 2 Cal. App. 197, 84 Pac. 364, 370.

By what we have said we do not mean to be understood as offering any encouragement to a certain class of so-called private detectives or informers who may, in pursuance of offered rewards, or for other valuable considerations, act as decoys and as such induce certain individuals to commit offenses. When it is made to appear that the offense charged was induced by a detective or other person, or that such detective or person was paid for obtaining the evidence necessary to convict, or that he is to receive additional compensation in a case of conviction, both the prosecuting officers and the trial courts should carefully scrutinize the evidence and should permit no conviction to be had, or, if had, to stand in case the offense was induced as aforesaid, and in case of paid evidence none should be permitted to stand if there is any doubt of the guilt of the accused.

But it does not follow that a conviction is unlawful merely because certain witnesses testifying for the prosecution may have received pay for looking up evidence against the accused. In such case the trial court must be permitted to exercise some discretion with regard to whether a conviction should stand or not. If no legal rights have been invaded and there is no abuse of discretion apparent, we should not interfere.

It is also contended that the court erred in refusing appellant's request to charge the jury as follows: "The testimony of witnesses who are interested in or employed to find evidence against the accused should be received with the greatest caution and distrust." We do not think it is the law that merely because one may be "interested . . . to find evidence against the accused" his testimony should be "received with the greatest caution and distrust." Nor do we think that the officers who were witnesses in this case come within the class who may be said to have been "employed to find evidence against the accused." While the courts are not

unanimous upon this question, it has nevertheless been held that "it is error for the court to charge the jury that the officers were persons hired to obtain evidence and their testimony subject to scrutiny, for they are in no sense detectives, but public officers." (2 Woollen & Thornton, Law of Intoxicating Liquors, sec. 707.) No doubt there are many cases wherein it has been held that; where it was made apparent that the witnesses, or some of them, are private detectives, or were paid for obtaining evidence against the accused, their testimony should be received with caution and should be carefully scrutinized, and that it constituted error to refuse to so charge the jury. We know of no case, however, where the court has gone to the extent that counsel asked the court to go in the request that was refused.

We think the law upon this subject is well stated by the Supreme Court of Colorado in the case of *O'Grady v. People*, 42 Colo. 312, 95 Pac. 346, where, in the headnote, it is said:

"The giving of instructions as to the caution to be observed in weighing the testimony of private detectives, or persons employed to find evidence, is based upon rules of practice rather than of law, and rests largely in the discretion of the trial court."

That the trial court should be permitted to exercise at least some discretion with regard to the giving of cautionary instructions is, we think, clearly illustrated by the undisputed facts of this case. Here, so far as the record discloses, were two reputable public officers who produced the evidence of appellant's transgressions in court and whose testimony was not disputed, not even questioned, by any one. Everything that took place at the sale as well as the motives and purposes of the officers was detailed by them, and therefore all of the facts relating to their statements were before the jury unquestioned. There were therefore no disputed questions of fact in the case. Under such circumstances, why should the court have given a special cautionary instruction with regard to the weight to be given to the officers' testi-

mony, to say nothing about giving the one asked for by appellant?

But if it be assumed that it was proper for the court to have given a cautionary instruction, or should have given appellant's request, still the question remains, In what way were any of his legal rights prejudiced by the court's refusal to give his request? The evidence was all one way, and no jury, under their oaths, would have been justified to have found the facts otherwise than they found them. True the jury could arbitrarily have found appellant not guilty regardless of the evidence against him, but it cannot be assumed that honest and conscientious men would have done so under any circumstances unless required to do so by a binding instruction. The failure to give appellant's request, even though it were held error, was therefore error without prejudice.

Complaint is also made that the court erred in refusing to give appellant's request to the effect that if any one of the jurors entertained a reasonable doubt of guilt they could not convict. The court instructed the jury upon that subject as follows: "You are instructed that, if after due consideration of the whole case and discussion thereof with your fellow jurymen any juror entertains a reasonable doubt of the guilt of defendant, it is the duty of the juror so entertaining such a doubt not to vote for a verdict of guilty nor to be influenced in so voting for the sole reason that other jurors would be in favor of a verdict of guilty." The criticism of counsel is aimed at that portion of the instruction in which the jury is told that a juror should not be influenced in voting for a conviction "for the sole reason that other jurors would be in favor of a verdict of guilty." In addressing himself to this subject, counsel in his brief says: "The error of the instruction given is in the fact that it permits a juror, though entertaining a reasonable doubt, still to vote guilty because other jurors so vote, provided he may find some additional reason (as that he may believe defendant *may* be guilty) for so voting." This seems to us a mere refinement. In fact, the

point to us seems so nice that although we possessed the powers of Hudibras, of whom it is said that

"He could distinguish and divide
A hair 'twixt south and southwest side,"

we still could offer a reasonable excuse for failing to grasp the reason why, under the circumstances of this case, the appellant was prejudiced in a legal right by the refusal to give the request. Moreover, an instruction in effect precisely like the one given by the court in this case was held to state the law correctly by the Supreme Court of California in *People v. Dole*, 122 Cal. 486, 55 Pac. 581, 68 Am. St. Rep. 50. The court therefore committed no error in refusing appellant's request.

Finally it is urged that the court erred in admitting in evidence an ordinance other than the one upon which the complaint was based. In the complaint it was alleged that appellant had violated the provisions of "section 1 of chapter 24 of the Revised Ordinances of Salt Lake City," passed April 5, 1909, approved April 7, 1909. It seems that the original complaint was prepared on a printed blank in which the ordinances of the city were designated as the Revised Ordinances, etc. It seems further that the book in which the ordinances appear, which was offered in evidence, was not entitled or designated as the Revised Ordinances, etc. This, however, is the only difference between the ordinances pleaded and the one introduced in evidence. The ordinance introduced in evidence was in fact the ordinance on which the complaint was based and approved as stated in the complaint. Counsel's contention, therefore, that there was a variance, is, in our judgment, entirely without merit.

The judgment is affirmed. Costs to be awarded against appellant as provided in Salt Lake City v. Robinson, 116 Pac. 448, 35 L. R. A. (N. S.) 610.

McCARTY, J., concurs.

STRAUP, J.

I dissent. It is alleged in the complaint that the defendant sold and disposed of intoxicating liquors—one drink of brandy and three bottles of beer—"without first having obtained a license so to do, contrary to the provisions" of an ordinance of Salt Lake City. · The only evidence of the city was that the defendant sold to two policemen of Salt Lake City at their solicitation and request, and who were sent for that purpose to the defendant's place of business by the chief of police, a drink of whisky and three bottles of beer paid for out of city funds. Upon that proof the city rested. The defendant also rested. No evidence was given of the nonexistence of a license, nor were any facts or circumstances shown from which such fact might be inferred. The court instructed the jury that the defendant was charged with selling intoxicating liquors "without first having obtained a license so to do from Salt Lake City." The court further instructed them that the defendant's plea of not guilty "put in issue every material allegation of the complaint and cast upon the city the burden of proving every essential fact constituting the offense charged." The court then instructed them that the burden was upon the plaintiff, the city, to prove that the defendant sold and disposed of intoxicating liquors, and that, "if the defendant at the·time it is alleged he sold intoxicating liquors had had a license from Salt Lake City so to dispose of intoxicating liquors, that would have been a defense to the offense charged; but the court instructs you that the burden of proving that defense, is on the defendant, and, no evidence having been introduced on behalf of the defendant that he had such license, the court instructs you that you must as-. sume that at such time the defendant had no such license." The court not only charged as to the burden of proof, but in effect directed a verdict as to one of the ingredients of the alleged offense, for the court upon the state of the evidence required the jury to assume—"you must assume"— that the defendant had no license. If the court in a criminal case may so direct a jury as to one essential element of the

alleged offense, I do not see why it may not do so, as to all other ingredients when in the opinion of the court there is no substantial conflict in the evidence. The court gave the usual instruction as to the presumption of innocence and the defendant's right to testify or decline, as he saw fit, and charged that his declining to testify, or his motive in so doing, could not be considered as indicating guilt or as affecting the question of his guilt or innocence.

The judgment is assailed on several grounds. One of them relates to the burden of proof as to the nonexistence or existence of a license. In that particular it is contended by the appellant that the burden was upon the city to show the want of a license; that there is no evidence to show that fact; and that the charge of the court in respect of such burden is erroneous. Upon this question there are a great variety of decisions. When analyzed, much of the conflict found in them is more apparent than real. The respondent has referred us to text-books on intoxicating liquors and to a half hundred cases, mostly those cited by Mr. Black in his work on intoxcating liquors, in support of its contention and of the charge. It is not practicable here to refer to all of them. They may be divided in groups: (1) Where by statute it is expressly provided that the burden of showing a license is on the defendant and that until such proof is made by him the presumption is to be indulged that he had no license or was not authorized. The cited case of *Commonwealth v. Carpenter*, 100 Mass. 204, and the cited later cases from that court, and the case of *Durfee v. State*, 53 Neb. 214, 73 N. W. 676, are illustrations of this group. (2) Where the exception or proviso was no part of the enacting clause, and was not descriptive of the offense, among them cases where the sale of, or the traffic in, intoxicating liquors was by statute forbidden, and where in sections other than the enacting clause exceptions were made permitting druggists or agents of the town or municipality, or other persons, to sell liquors for medicinal, mechanical, or some other specified purpose on a permit or license. In such case the offense is complete by the mere

proof of the sale of intoxicating liquors; the nonexistence
of a license not being descriptive and no part of the offense.
The permit or license in such case is matter in defense.
This group is illustrated by the cited case of *State v. Mc-
Glynn,* 34 N. H. 422, and other cited cases from that court,
the earlier Massachusetts cases, especially *Commonwealth v.
Tuttle,* 12 Cush. 502, the Maine cases, and cases from other
jurisdictions.    Most of the cases cited by respondent fall
within this group.    (3)    Where the existence or nonexist-
ence of a license is a fact peculiarly within the knowledge
of the defendant, and where, if he had one, it could readily
have been produced by him, and where the want of it could
not be shown by the prosecution, at least not without great in-
convenience.    This is a reason generally given by courts for
holding that the burden is on the defendant to show a license
in cases falling within a second group.    Some courts, how-
ever, have applied it to cases which do not fall within either
the first or second group as is illustrated by the cited case of
*Williams v. State,* 35 Ark. 430, and other cases.

In determining this question, and in reading the cases,
due regard must be had to the various statutes fixing the
burden of proof and defining the ingredients of the offense
and to the facility or means of proof.    These have been
disregarded by some courts and text-writers.    Mr. Black
in his work on Intoxicating Liquors, sec. 507, lays down
the doctrine broadly that the defendant in all cases must
assume the burden of proving that he was duly li-
censed.    In support of this he cites, among other cases, the
case of *Commonwealth v. Carpenter, supra,* and three other
later cases from Massachusetts where, by an express statute,
the burden to show a license was placed upon the accused,
and many cases where by statute the offense was complete
by the mere proof of the sale of intoxicating liquors, and
where the exception or proviso was no part of the enacting
clause nor descriptive of the offense. Cases are thus cited
by the respondent indiscriminately, and regardless of stat-
utes fixing the burden of proof and of the fact of whether
the exception or proviso was or was not a part of the en-

acting clause or in part descriptive of the offense, and in disregard of the means or facility of proof to show the want of a license. These cases can have no application to the case in hand unless the statute and the facts are similar. We have no statute fixing the burden of proof or declaring what shall be *prima facie* or presumptive evidence of the want of a license, and hence the cases falling within the first group have clearly no application. Does the case fall within either of the other groups?

At the time of the commission of the alleged offense the traffic in intoxicating liquors was not prohibited. It was regulated. The statute (Comp. Laws 1907, sec. 1242) provides that no person shall manufacture, sell, etc., or otherwise dispose of intoxicating liquors, "without first obtaining from the board of county commissioners of the county, or city council of the city, or board of trustees of the town in which he intends to do business, a license therefor as hereinafter provided." The statute authorizes such boards and city councils to grant licenses in their respective counties, cities, and towns. Provisions are then made for the manner of applying for, and the granting of, licenses. It is provided that one seeking a license to sell liquors in a city is required to file with the city recorder a written application in which he is required to definitely state certain particulars enumerated in the statute. Before a license is granted, he is also required to execute and file a bond with the city recorder to be approved by the city council and conditioned for the payment of all damages, fines, and forfeitures which may be adjudged against him. In harmony with the statute, Salt Lake City by ordinance provided that "it shall be unlawful for any person," etc., to manufacture, sell, etc., intoxicating liquors "without first obtaining a license so to do as hereinafter provided." Provisions are then made for the manner of applying for liquor licenses, the granting of them, and the giving and approval of bonds. The applicant is required to file a petition with the city recorder, and a copy with the license assessor, and a bond with the city recorder to be approved by the city council. If it approves the bond,

the license is granted by it. A record of such proceedings is made and kept. Under such a statute and under such an ordinance the gravamen of the offense is the manufacture, sale, or other disposal of intoxicating liquors without a license. The want of a license is a part of the enacting clause defining the offense and constitutes a descriptive part and is an ingredient of it. The criminal act is not complete without it.

In the case of *State v. Williamson*, 22 Utah, 248, 62 Pac. 1022, 83 Am. St. Rep. 780, this court said:

"If the exception is stated in the enacting clause of the statute, it is ordinarily necessary to negative it in order that the description of the crime may correspond with the statute as, if a statute imposes a penalty for the sale of spirituous liquors without a license, the indictment should aver the want of a license."

This is a familiar and the general rule. (22 Cyc. 344; 1 Bishop Crim. Pro., sec. 631; Bishop Stat. Crim., sec. 1042.)

It, however, is urged that, while it was essential to aver in the complaint the want of a license, it nevertheless was not essential for the city to prove it because the proof of such fact involved proof of an exception or proviso, or of a negative peculiarly within the knowledge of the defendant. But such a doctrine is generally applied to those cases whether the exception is not in the enacting clause and is not descriptive of the offense, and where the negative allegation does not constitute a part of the original substantive cause of action. (*Melone v. Reffino*, 129 Cal. 514, 62 Pac. 93, 79 Am. St. Rep. 127.)

Wharton in his work on criminal evidence, sec. 342, well states the principle:

"As a general rule a license to do a particular thing, when a purely extrinsic defense, is to be proved by the defendant by a preponderance of proof, but whether the license is so extrinsic depends upon the concrete case. When the nonexistence of the license is not averred in the indictment, and the license is particularly within the knowledge of the party holding it, the burden is on him to procure such license in those cases in which the exist-

40 Utah 30

ence of the license is in question. But where the nonexistence of the license is averred in the indictment, and is essential to the case of the prosecution under the rules announced, the nonlicense must be proved by the party to whose case it is essential."

Bishop on Statutory Crimes, sec. 1051, says:

"Must the negative averment that the defendant was not licensed or otherwise authorized to make the sales (of liquors) be proved? Now in principle, as this negative matter is a part of the government's case against the defendant, it must in some way be made *prima facie* to appear at the trial."

And in his work on New Criminal Procedure, vol. 1, sec. 1049, the same author says:

"On the plea of not guilty where the defendant admits nothing against himself, the burden of proof is on the prosecuting state; and it must affirmatively establish, as the indictment must charge, every element in the offense."

That the city was here not only required to allege but also to prove the want of a license, though the proof of such fact involved proof of a negative, is supported by the cases of *Hepler v. State,* 58 Wis. 50, 16 N. W. 42; *State v. Nye,* 32 Kan. 201, 204, 4 Pac. 134, 136; *State v. Richeson,* 45 Mo. 575; *State v. Evans,* 50 N. C. 250; and *State v. Downs,* 116 N. C. 1064, 21 S. E. 689. We, however, need not look outside of this jurisdiction for authority on this question, for such a doctrine was expressly held by us in the case of *State v. Wells,* 35 Utah, 400, 100 Pac. 681, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631. That case involved a statute relating to the crime of abortion. The statute provided that every person who provides or administers to any pregnant woman any drug, etc., or uses or employs any instrument etc., "with intent thereby to procure a miscarriage of such woman, unless the same is necessary to preserve her life, is punishable," etc. We there held that the state was not only required to allege the exception or negative, but that it also was required to prove it. We there, quoting from the case of *State v. Aiken,* 109 Iowa, 643, 80 N. W. 1073, said:

"As a general rule when the offense is grounded on a negative, and when that negative is an essential element of the crime, the burden is on the state to prove it."

No doubt all that is required of it in the first instance is to make out a *prima facie* case, but that it must do in order to make out its case. And quoting from *Moody v. State,* 17 Ohio St. 110, we also said:

"The absence of such necessity is then so far descriptive of the crime that the offense cannot be established without proof that such necessity did not exist. It is the producing an abortion in the absence of such necessity that, upon the theory of the statute, constitutes the offense."

So here I think it is clear that the want of a license is an essential element of the alleged crime and a descriptive part of it. The charged offense is a sale without a license. The defendant could not properly be convicted without a finding that he had no license. That fact constituted a part of the substantive cause of action. To support the judgment a finding in favor of the city on the alleged negative put in issue by the defendant's plea was an essential and must necessarily be implied in the general verdict. When such is the case, the prosecution is not only required to allege but also to prove the negative allegation. Of course a less amount of proof as to such an allegation than is usually required may avail, but the truth of it as a part of the case of the prosecution must in some way be made *prima facie* to appear, or must otherwise be made to appear at the trial by evidence.

In 16 Cyc. 927, the doctrine is stated, and is supported by numerous cases of many of the states and of England that, whenever an affirmative case requires proof of a material negative allegation, the party, whether plaintiff or the defendant, has the burden of proving it, even as to facts within the knowledge or control of the other side. This is a rule of evidence well established and frequently applied both in criminal and civil cases. It was again but recently applied by this court in the case of *Wilkinson v. O. S. L. R.*

*Co.*, 35 Utah, 110, 99 Pac. 466.   There a statute (Comp. Laws 1907, sec. 447) required a locomotive before crossing a main track at grade of another railroad to come to a full stop at a distance not exceeding 400 feet, "provided that, whenever interlocking signal apparatus and derailing switches are adopted, such stop shall not be required," and made a violation of the provisions a misdemeanor and rendered the corporation operating the engine liable in damages to one injured through such neglect.   This court held that the burden of proving the negative that there were no interlocking signal apparatus and derailing switches was upon the plaintiff, the party who had alleged and asserted that the locomotive was in violation of the statute operated over a main track at grade of another railroad without stopping.

I think the Wells Case and the Wilkinson Case on this point were correctly decided, for in the one the exception, and in the other the proviso, was a part of the enacting clause creating the offense, and was in part descriptive of it.

That the want of a license, under a statute or an ordinance as here, was a necessary and essential allegation of the complaint, and that the alleged criminal act was not complete without it, is conceded by all of the authorities. And, if the cases of this court just referred to are observed, I think it follows that the burden of proving the want of a license was upon the city though the proof of such fact involved proof of a negative, and even though it were peculiarly within the knowledge of the defendant.   It was here no more within his knowledge than was the fact of the averred negative within the knowledge of the defendant in the Wells Case.

But what is there here to justify the conclusion that the fact of the averred negative was peculiarly within the knowledge of the defendant and that the city had not the facility or means of proving it?   In some of the cases there was some reason for such a conclusion.   On this point the case of *The King v. Turner*, 5 M. & S. 206, is freely cited as a leading case by text-writers and courts.   In that case there

was a conviction upon a statute against a carrier for having game in his possession. As stated by Lord Ellenborough, there were ten different heads of qualifications enumerated in the statute, among them a person having lands or entitled to an estate. Proof of any one of the qualifications enumerated under the different heads justified the accused's possession. The enumerated qualifications were in effect exceptions and not ingredients of the offense. Lord Ellenborough observed that, if the prosecution should be required to prove the negative of all of the qualifications under the ten different heads, "there would be a moral impossibility of ever convicting upon such an information," Justice Bayley, "We cannot but see that it is next to impossible that the witness for the prosecution should be prepared to give any evidence of the defendant's want of qualification," and Justice Holroyd, "All these qualifications are peculiarly within the knowledge of the party himself, whereas the prosecution has probably no means whatever of proving a disqualification."

Here the defendant was complained against and prosecuted by Salt Lake City, the only person, the corporation, authorized to grant a license to sell liquors within the corporate limits of the city. Under the ordinance liquor licenses were granted for a term of only three months. Before any license was granted by it a written petition therefor and a bond were required to be filed with the city recorder and a copy of the petition and an affidavit with the license assessor. A record of such facts and of the granting of licenses were made and kept. It is by statute made the duty of the city recorder to keep "all papers and records of the city, and keep a record of the proceedings of the city council whose meetings it shall be his duty to attend." The fact of whether the plaintiff had or had not granted a license to the defendant to sell intoxicating liquors, was therefore not peculiarly within the knowledge of the defendant, but was equally within the knowledge of the plaintiff, its agents, and officers. It had not only ready and convenient means of ascertaining the want of a license if one was not issued to

him, but it also had the facility and ready means of proving it. I see no good reason for here saying or holding that the fact was peculiarly within the knowledge of the accused, or that the city had not the means and facility of proving it.

True, the defendant, if he had a license, could readily have produced it. So could he readily have testified that he sold no liquor to the persons named in the complaint, if such had been the fact. The fact of whether he had or had not sold intoxicating liquor to them was as much within his knowledge as was the fact of whether he had or had not a license. Among the fundamental principles of our criminal jurisprudence are those that the accused is presumed innocent until he is proven guilty; that the burden is upon the prosecution to prove not one or several, but all of the essential, elements constituting the alleged offense; that burden does not shift, and at no stage of the proceedings is the defendant required to prove his innocence as to any of the essential alleged facts; and he may or he may not be a witness on his own behalf, and "his neglect or refusal to be a witness shall in no manner prejudice him nor be used against him on the trial or proceeding." These provisions are established and guaranteed by our Constitution and statutes, and are recognized by well-established rules of evidence. They, of course, may be changed by direct legislative enactments not inconsistent with the Constitution. But in the language of the court in the case of *Hepler v. State, supra.*

"It certainly is not the duty of the court to break down established rules of evidence nor to bend them to the exigencies of a particular case. On the contrary, it is the recognized duty of courts to be the conservators of the law as it is in all its integrity."

When an exception or a negative is not an essential element of the offense, nor descriptive of it, and when it is matter in defense and as such is relied on, I see much reason for holding that the burden is on him who seeks a justification or an exemption under it. But when it is an essential

element of the alleged offense, and where the alleged criminal act is not complete without it, and where the affirmative case of the prosecution requires proof of the material negative allegation, I do not see on what principle it may be said that the burden of proof as to such negative allegation is shifted to the accused, without doing violence to the fundamental principle that the defendant's plea of not guilty admits nothing and casts the burden of proof on the prosecution to "affirmatively establish, as the indictment must charge, every element in the offense," and every ingredient necessary to a conviction. And whatever reasons may have been given by courts for casting on the defendant in a criminal case the burden of disproving a material negative averment in the complaint or indictment because it involved proof of a fact peculiarly within his knowledge, and because of a want of means or facility on the part of the prosecution to prove the negative, are here not present; and, where the reasons fail, the rule itself fails.

I think the judgment should be reversed and the case remanded for a new trial.