## STATE v. McCORNISH.

No. 3619.   Decided June 17, 1921.   Rehearing Denied November 10, 1921.   (201 Pac. 637.)

1.   STATUTES—MATTERS COVERED BY STATUTE AGAINST PANDERING, AS AMENDED, HELD PROPERLY INCLUDED UNDER ONE TITLE. Laws 1911, c. 108, § 1, now Comp. Laws 1917, § 8095, relating to pandering, described as in substance procurement of a female inmate for a house of prostitution, and enticing, persuading, encouraging, inveigling or inducing a female person to become a prostitute, and section 3 thereof, as amended by Laws 1915,

c. 6, now Comp. Laws 1917, § 8097, providing penalties for re-
ceiving money from fallen women, and making it a felony to
procure a female for prostitution, or to send or direct a female
to any place for that purpose, whether compensated therefor
by either, and other similar provisions, are cognate and related
to each other, and their inclusion under one title is not in
conflict with Const. art. 6, § 23, providing that no bill shall be
passed containing more than one subject clearly expressed in
its title.

2.  STATUTES—CONSTITUTIONAL PROVISION THAT A BILL SHALL CON-
TAIN ONLY ONE SUBJECT, TO BE EXPRESSED IN ITS TITLE, CON-
STRUED.  Under Const. art. 6, § 23, providing that no bill shall
be passed containing more than one subject, which shall be
clearly expressed in its title, the Legislature may not arbi-
trarily make one subject out of that which naturally constitutes
two; but, when cognate subjects are combined in one act, the
vice of duplicity is avoided, and they constitute but one legisla-
tive subject, and if the title in its broad and popular sense is
the general subject, it is sufficient.[1]

3.  STATUTES—RULES CONSTRUING CONSTITUTIONAL PROVISION THAT
A BILL SHALL CONTAIN ONLY ONE SUBJECT, WHICH MUST BE
CLEARLY EXPRESSED IN THE TITLE.  General rules of construction
of Const. art. 6, § 23, providing that a bill shall contain only
one subject of legislation, which must be clearly expressed in
its title, are as follows:    (1) That the constitutional provisions
should be liberally construed; (2) that it should be applied so
as not to hamper the law-making power in framing and adopt-
ing comprehensive measures covering the whole subject,
branches of which may be numerous, and where all have some
direct connection with or relation to principal subject treated;
(3) that it should be so applied as to guard against the real
evil which it was intended to meet; and (4) that each case
must, to a large extent, be determined in accordance with the
peculiar circumstances and conditions thereof.[2]

4.  CONSTITUTIONAL LAW—PRESUMPTION IS IN FAVOR OF VALIDITY OF
STATUTE.  Every presumption is in favor of the constitutionality
of a statute, and in case of doubt it must be held valid.

5.  STATUTES—WHERE OBJECTIONABLE MATTER IN AN AMENDATORY
ACT COULD HAVE BEEN INCLUDED IN THE ORIGINAL UNDER ITS

[1] *Marioneaux v. Cutler*, 32 Utah, 485, 91 Pac. 355.

[2] *Edler v. Edwards*, 34 Utah, 18, 95 Pac. 367; *Martineau v.
Crabbe*, 46 Utah, 327, 150 Pac. 301; *Salt Lake City v. Wilson*, 46
Utah, 60, 148 Pac. 1104; *Naylor v. Crabbe*, 45 Utah, 617, 148 Pac.
359; *State v. Erickson*, 47 Utah, 452, 154 Pac. 948; *Mutart v. Pratt*,
51 Utah, 246, 170 Pac. 67.

TITLE, THE AMENDATORY ACT DOES NOT COMBINE TWO SUBJECTS UNDER ONE TITLE. If a matter that is objectionable in an amendatory act could have been included in the original under the original's title, the amendatory act is not objectionable as containing a dual subject under one title, contrary to Const. art. 6, § 23.

6. PROSTITUTION—EVIDENCE HELD TO SHOW PRIMA FACIE THAT ACCUSED WAS AN EMPLOYEE OF A HOTEL. In a prosecution for pandering, evidence that defendant wore the hotel's uniform and performed the duties of a bell boy showed prima facie that he was an employee of the hotel.

7. CRIMINAL LAW—WHERE NEW TRIAL WAS DENIED, QUESTION OF SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT WAS NOT REVIEWABLE ON APPEAL. Where the trial court did not interfere with the verdict on the ground of insufficiency of evidence when the motion for new trial was argued, the sufficiency of evidence to support the verdict cannot be reviewed.

8. CRIMINAL LAW—ENCOURAGING A CRIMINAL ACT IS A CRIME. Under Comp. Laws 1917, § 7919, to advise or encourage a criminal act is in itself a crime.

9. CRIMINAL LAW—CONVICTION OF CRIME INSTIGATED BY DETECTIVE WILL NOT BE UPHELD. In a prosecution for pandering, where a detective persuaded defendant to commit the crime, which he would not otherwise have committed, for the purpose of convicting him, a conviction will not be upheld.[3]

Appeal from District Court, Third District, Salt Lake County; *H. M. Stephens*, Judge.

John McCornish was convicted of pandering and he appeals.

REVERSED AND REMANDED.

*King & Schulder*, of Salt Lake City, for appellant.

*Harvey H. Cluff*, Atty. Gen., and *W. Hal Farr*, Asst. Atty. Gen., for the state.

WEBER, J.

[3] *City v. Robinson*, 40 Utah, 448, 125 Pac. 657.

The defendant appeals from a judgment of conviction in the district court of Salt Lake county on the charge of pandering. The charging part of the information is in substance as follows:

That the said John McCornish, being at the time a bell boy employed in the Wilson Hotel, did then and there willfully, unlawfully, knowingly, and feloniously procure, direct, and send a female person, to wit, Marie Morgan, to room No. 131 of said hotel for the purpose of prostitution with another male person, to wit, Joe Bringhurst, who was then and there occupying said room.

To this information defendant interposed a demurrer, alleging that the statute upon which the information is based is null and void, for the reason "that the statute, and such portions of it as relate to the offense described in the information, was not passed in accordance with the requirements of the law." This demurrer was overruled, the ruling is assigned as error, and thereby the validity of that part of chapter 108, Laws 1911, as amended by chapter 6, Laws 1915 (now chapter 25, Comp. Laws 1917), is challenged.

Counsel argue that the portion of the act under which appellant was prosecuted is unconstitutional and void, for the reason that it is in violation of section 23, art. 6, of the Constitution of Utah, which provides that "no bill shall be passed containing more than one subject, which shall be clearly expressed in its title." By chapter 6, Laws 1915, section 3 of chapter 108, Laws 1911, was amended; the title of the amended Act being:

"Receiving Money from Fallen Women. An act to amend Sec. 3, Ch. 108, Laws of Utah 1911, relating to receiving money from fallen women."

Section 3 of the act of 1911 relates entirely to receiving money from fallen women, and prescribes the penalty, while the amended section contains, in addition, provisions making it a felony for any person to procure a female for the purpose of prostitution for another male person, by either personal solicitation, messenger, telephone call, or other means, and makes it a felony to send or direct any female person to the sleeping apartment or lodging room of any male person, or to any other place for the purpose of prostitution, whether

for hire or commission in the proceeds of the prostitution, or for any other consideration of value from either the man for whom such female was procured or from the female so procured; that every messenger, hotel or rooming house proprietor, clerk or other employee of such place, every chauffeur or hack driver, or any other person, who by any means sends, directs, takes, or conveys any female person to any room or other place for the purpose of prostitution or who keeps a list of female persons to call or be called for the purpose of prostitution shall be deemed guilty of a felony; that every hotel, lodging house or rooming house keeper or any other person having charge of such places, who knowingly allows rooms of such places to be used for the purpose of prostitution shall be guilty of a felony. The amendment also contains other provisions of a similar nature.

It is argued by counsel for appellant that the subject of the act of 1911 is "pandering," which is described in great detail in section 1 of the act; the substance, however, being that pandering is the procurement of a female inmate for a house of prostitution, and enticing, persuading, encouraging, inveigling, or inducing, a female person to become a prostitute; that "receiving money from fallen women" is a separate and distinct matter, not included in the definition of "pandering" as contained in said section 1, c. 108, Laws 1911; that section 3, therefore, is separate and distinct from pandering, as defined, and creates a new crime, as the subhead of said section provided, to wit, "Receiving Money from Fallen Women." Counsel therefore conclude that:

"It is therefore obvious that chapter 108, as it is arranged and divided under the one head, subject and title of pandering, treats of two separate and distinct crimes, to wit: (1) Pandering, as defined by the statute; and (2) receiving money from fallen women, and that but one subject is expressed in the title of the act."

The subjects included in the act may be distinct in one sense, nevertheless they are cognate and related to each other and are properly included in one act and under one title. As stated in *Marioneaux* v. *Cutler*, 32 Utah, 485 91 Pac. 355, the Legislature may not arbitrarily make one subject out of that which naturally and logically consti-

tutes two; but when cognate subjects are combined in one act the vice of duplicity is avoided, and they constitute but one legislative subject. It has been said that a title was never intended to be an index to the law. If the title, in its broad and popular and not in its technical and restricted sense, gives the general subject of the enacted legislation, it is sufficient. So, in the act in question, everything therein included is related to the one purpose of the act, and that is the suppression of pandering, the prevention of prostitution, and the suppression and punishment of kindred crimes. Section 3 of the 1911 law, which was all that was amended, relates to the subject of receiving money from fallen women. By the amendment of 1915 that section is amplified, and a number of cognate and related subjects are added.

Referring to section 23, art. 6, of the Constitution, quoted above, and particularly as applied to amendatory acts, the general rules of construction and interpretation have been declared by this court in *Edler* v. *Edwards*, 34 Utah, at page 18, 95 Pac. 367, to be: (1) That the constitutional provision now under consideration should be liberally construed; (2) that the provision should be applied so as not to hamper the lawmaking power in framing and adopting comprehensive measures covering the whole subject, the branches of which may be numerous, but where all have some direct connection with or relation to the principal subject treated; (3) that the constitutional provision should be so applied as to guard against the real evil which it was intended to meet; (4) that no hard and fast rule can be formulated which is applicable to all cases, but each case must to a very large extent be determined in accordance with the peculiar circumstances and conditions thereof, and that the decisions of the courts are valuable merely as illustrations or guides in applying these general rules. The doctrine of the *Edler Case*, 34 Utah, 13, 95 Pac. 367, has been approved and applied in *Martineau* v. *Crabbe*, 46 Utah, 327, 150 Pac. 301; *Salt Lake City* v. *Wilson*, 46 Utah, 60, 148 Pac. 1104; *Naylor* v. *Crabbe*, 45 Utah, 617, 148 Pac. 359; *State* v. *Erickson*, 47 Utah, 452, 154 Pac. 948; *Mutart* v. *Pratt*, 51 Utah, 246, 170 Pac. 67.

It is also well-settled doctrine that every presumption is in favor of the constitutionality of a statute and that in case of doubt the statute must be held to be valid. It is equally well settled (see cases above cited) that if the matter that is objectionable in an amendatory act could have been included in the original, under the title of that **4, 5** act, then the amendatory act is not vulnerable to the objection that it contains a dual subject. Applying these principles and rules to the amendatory act, the validity of which is challenged, it is plain and clear that the amendment of 1915 is not repugnant to the Constitution, and that the law is valid.

The next assignment of error is that there was no evidence to prove that appellant was an employee of the Wilson Hotel at the time of the alleged crime. One of the issues submitted to the jury was that defendant was an employee of said hotel. By its verdict the jury answered that question in the affirmative. At the time of the alleged commission of the crime by defendant, he was performing the duties of a bell boy at the hotel; he wore the hotel's uniform; **6, 7** he answered telephone calls; he conducted guests to their rooms, and performed such other services as bell boys usually perform. That certainly was prima facie evidence that he was an employee of the hotel at the time. The jury evidently accepted this prima facie evidence in preference to the evidence produced by the defendant. That was the right and privilege of the jury, with which the trial court did not interfere when the motion for a new trial was argued, and it is therefore not a subject for review in this court.

In another assignment of error it is claimed:

That "if any offense was committed it was committed solely by the prosecuting witness, Bringhurst," and that "it was induced by him at the expense of Salt Lake City, and without any suggestion, intimation, aid, assistance, or acquiescence whatever on the part of the defendant herein, and under such circumstances that clearly establish the fact that the defendant is not guilty of the pretended crime charged."

On March 17, 1920, Joe Bringhurst, a city policeman, was serving for the first time on the "anti-vice" or "purity"

squad. In the evening of that day he went to the Wilson Hotel and procured a room. He testified that he went there to ''get something on the hotel.'' Royally he spent the city's money, paying $12 per pint for whisky which he bought of the defendant. Later on he left the hotel and telephoned for a policeman, who returned with him and was secreted in a closet adjoining his room. Thereafter a woman, claimed by the police to be a prostitute, went to Bringhurst's room, who, as he claims, was sent there by defendant. From reading the evidence, which need not be repeated here, we have arrived at the conclusion that whatever wrong was committed by the defendant in sending the woman to Bringhurst's room was induced by the solicitations of Bringhurst, the ''anti-vice'' squad policeman. The record is devoid of any evidence indicating that the defendant was or ever had been a panderer. As we read the evidence, no offense would have been committed, had Bringhurst not instigated its commission. It was Bringhurst's encouragement and importunities which apparently led the defendant into whatever crime he may have committed.

Policemen are conservators of the peace. It is their duty to prevent crime, not to instigate and encourage its commission. Nothing can be more reprehensible than to induce the commission of crime for the purpose of **8, 9** apprehending and convicting the perpetrator. To advise or encourage a criminal act is in itself a crime. Comp. Laws Utah, § 7919. In his zeal and anxiety to apprehend some one in a criminal act, this city detective deliberately planned and induced the commission of an offense which otherwise would not have been committed by any one.

By these strictures we do not intend to criticize the good services rendered by faithful policemen, generally, but, in the language of the Supreme Court of Colorado in *Connor* v. *People*, 18 Colo. 373, 33 Pac. 159, 25 L. R. A. 341, 36 Am. St. Rep. 295:

"We do say that when in their zeal, or under a mistaken sense of duty, detectives suggest the commission of a crime and instigate others to take part in its commission in order to arrest them while in the act, although the purpose may be to capture old

offenders, their conduct is not only reprehensible, but criminal, and ought to be rebuked rather than encouraged by the courts."

This court is squarely on record as to what should be done under the facts and circumstances disclosed by the evidence in the present case. In *City* v. *Robinson,* 40 Utah, 448, 125 Pac. 667, Mr. Chief Justice Frick, who delivered the opinion of the court, said:

."No doubt, if public officers have induced or procured a defendant to commit a burglary or larceny or other offense which he did not intend to commit, nor would have committed except for the inducement of such officer, public policy will not justify a conviction for an offense committed under such circumstances. * * * When it is made to appear that the offense charged was induced by a detective or other person, * * * both the prosecuting officers and the trial courts should carefully scrutinize the evidence and should permit no conviction to be had, or, if had, to stand, in case the offense was induced as aforesaid. * * *"

The principles announced in the *Robinson Case* meet our approval and are applicable here.

The judgment is therefore reversed, and defendant is granted a new trial.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.

### ON PETITION FOR REHEARING.

FRICK, J. Counsel for the state have filed a petition for rehearing, in which they contend that this court erred in reversing the judgment. The principal reasons urged for a rehearing are that this court "erred in its application of the principle of law announced in the case of *State* v. *Robinson,* 40 Utah, 448," and that it also "erred in its conclusion from the evidence that if any crime was committed it was committed by the witness Bringhurst and not by the defendant."

Counsel insist that, if the decision stands, the state will be greatly hampered both in detecting crime and in convicting criminals. There is no merit to the contention. All that is held in *State* v. *Robinson, supra,* is that, where it is made to appear that the accused was induced to commit the alleged crime by an officer of the law, which crime would not have

been committed but for the inducement of such officer, the conviction will not be permitted to stand. What amounts to such an inducement is pointed out in that case. The facts in that case were, however, entirely different from those in this case. If the defendant in this case had been engaged in some unlawful business or enterprise, as was the case in *State* v. *Robinson, supra,* and an officer had merely, in the course of defendant's business, asked him to deal with such officer as he dealt with others, the case would be entirely different. The defendant in this case, was, however, not carrying on, either directly or indirectly, an unlawful business or enterprise; but he, as we construe the evidence, was by the officer requested and induced to do an act constituting a crime which he would not have done but for the inducement of the officer. The officer thus induced the defendant to do what he would not have' done but for such inducement. An officer may not induce a boy to commit a larceny or a bur- glary, and then insist that the boy should be charged with the crime and convicted upon such officer's statements. This court has not the slightest desire to hamper the officers in de- tecting crime, but it cannot and will not sustain convictions for alleged crimes which would not have been committed, but for the inducement of the officers of the law.

Counsel, it is true, contend that in this case the evidence does not bear out our conclusion that the defendant was induced to commit the crime of which he stands convicted. After again carefully considering all of the evidence, we are still satisfied that our former conclusion is right. We could subserve no good purpose by stating the evidence and the reasons which impelled us to arrive at that conclusion in the original opinion. If the rule stated in the opinion is correctly interpreted and applied there is no danger whatever that any officer of the law or prosecutor will be hampered either in detecting crime or in convicting criminals. The rule that officers of the law are not permitted to induce acts consti- tuting crimes which would not have been committed but for such inducement, and that convictions based upon such in- ducements will not be permitted to stand, is both wholesome

and salutary and should be enforced. That is precisely what is held in the former opinion.

The petition for a rehearing should therefore be, and it accordingly is, denied.

CORFMAN, C. J., and WEBER, GIDEON, and THUR-MAN, JJ., concur.