## STATE TAX COMMISSION v. CITY OF LOGAN

No. 5675. Decided February 19, 1936. (54 P. [2d] 1197.)

Rehearing denied May 26, 1936.

*Ned Warnock*, of Salt Lake City, for appellant.

*Leon Fonnesbeck*, of Logan, for respondent.

ELIAS HANSEN, Chief Justice.

In this action the state tax commission of Utah, hereinafter referred to as the commission, seeks to recover a sales tax from Logan City, hereinafter referred to as the city, for electric energy, generated by a hydroelectric power plant owned and operated by the city, and sold by it to its inhabitants. To the complaint filed by the commission the city demurred generally and specially. The demurrer was sustained. The commission refused to further amend its com-

plaint, whereupon the action was dismissed. The commission appeals. It assigns as error the order sustaining the demurrer and the judgment dismissing the action. The commission claims authority to collect the sales tax in controversy pursuant to the provisions of Laws of Utah 1933, c. 63, as amended by Laws of Utah 1933, Second Special Session, c. 20. Both the constitutionality and the construction of the statutes levying a sales tax are brought in question. We quote those portions of the act which bear upon the questions which divide the parties to this controversy. The title of Laws of Utah 1933, c. 63, is as follows:

"An act to Provide for the Raising of Revenue for Emergency Purposes by imposing a Tax Upon the Retail Purchase of Certain Commodities, Admissions and Services and for the Ascertainment, Assessment and Collection of Said Taxes; to Provide for the Distribution of Said Revenue and to Provide Penalties for the Violation of the Terms of This Act."

The act contains among its provisions the following:
Section 4, subd. (b) thereof:

"From and after the thirty-first day of May, 1933, there is hereby levied and there shall be collected and paid. * * *
"A tax equivalent to three-quarters (¾) of one (1) per cent of the amount paid for all services rendered or commodities furnished for domestic or commercial consumption by any utility of the state of Utah."

Section 2, subd. (i):

"The term 'utility' as herein used, shall be construed to mean any utility under the jurisdiction of the public utilities commission."

Section 5: "Every person receiving any payment or consideration upon a sale of property or service subject to the tax under the provisions of this act, or to whom such payment or consideration is payable (hereinafter called the vendor) shall be responsible for the collection of the amount of the tax imposed on said sale and shall, on or before the fifteenth day of each month, make a return to the state tax commission for the preceding month and shall remit the taxes so collected to the state tax commission. Such returns shall contain such information and be made in such manner as the state tax commission may

by regulation prescribe. The state tax commission may extend the time for making returns and paying the taxes collected under such rules and regulations as it may prescribe, but no such extension shall be for more than ninety days."

Section 8: "As soon as practicable after the return is filed, the tax commission shall examine it; if it then appears that the correct amount of tax to be remitted is greater or less than that shown in the return to be due, the tax shall be recomputed. If the amount paid exceeds that which is due, the excess shall be credited against any subsequent remittance from the same person. If the amount paid is less than the amount due, the difference, together with interest thereon at the rate of one-half of one per cent per month from the time the return was due, shall be paid by the vendor ten days after notice and demand to him from the tax commission.

"If any part of the deficiency is due to negligence or intentional disregard of authorized rules and regulations with knowledge thereof, but without intent to defraud, there shall be added ten per cent of the total amount of the deficiency and interest in such a case shall be collected at the rate of one per cent per month on the amount of such deficiency from the time the return was due, from the person required to file the return, which interest and additions shall become due and payable ten days after notice and demand to him by the commission. If any part of the deficiency is due to fraud with the intent to evade, then there shall be added not more than one hundred per cent of the total amount of the deficiency and in such case, the whole amount of the tax unpaid, including the additions, shall become due and payable ten days after notice and demand by the tax commission and an additional one per cent per month on said amount shall be added from the date the same was due until paid."

Section 9: "It shall be the duty of every person engaging or continuing, in this state, in any business for the transaction of which a license is required under this act, to keep and preserve suitable records of all sales made by him and such other books or accounts as may be necessary to determine the amount of tax for the collection of which he is liable under the provisions of this act. It shall be the duty of every such person to keep and preserve for a period of three years all invoices of goods and merchandise purchased for resale and all such books, invoices and other records shall be open for examination at any time by the tax commission or its duly authorized agent. If no return is made by any person required to make returns as provided herein, the tax commission shall give written notices by mail post paid to such person to make such return within thirty days of the date of such notice and if such person shall fail or refuse to make

such return as he may be required to make in such notice, then such return shall be made by the tax commission from the best information available and such return shall be prima facie correct for the purposes of this act, and the amount of the tax due thereon shall be deemed a deficiency and subject to the addition of penalties and interest as provided in section 8 hereof."

Section 11: "A tax due and unpaid under this act shall constitute a debt due the state from the vendor and may be collected, together with interest, penalty and costs, by appropriate judicial proceeding, which remedy shall be in addition to all other existing remedies."

Section 12: "If any person, having made a return and paid the tax provided by this act, feels aggrieved by the assessment made upon him by the tax commission, he may apply to the tax commission by petition in writing within ten days after the notice is mailed to him for a hearing and a correction of the amount of the tax so assessed, in which petition he shall set forth the reasons why such hearing should be granted and the amount by which such tax should be reduced. The tax commission shall notify the petitioner of the time and place fixed by it for such hearing. After such hearing, the tax commission may make such order in the matter as may appear to it just and lawful and shall furnish a copy of such order to the petitioner."

Section 13: "Every decision of the tax commission shall be in writing and notice thereof shall be mailed to the vendor within ten days, and all such decisions shall become final upon the expiration of thirty days after notice of such decision shall have been mailed to the vendor, unless proceedings are taken within said time for review by the supreme court upon writ of certiorari as herein provided, in which case it shall become final, (1) when affirmed or modified by the judgment of the supreme court; (2) if the supreme court remands the case to the tax commission for rehearing, when it is thereafter determined as hereinabove provided with respect to the initial proceeding."

Section 14: "Within thirty days after notice of any decision of the tax commission, any party affected thereby may apply to the supreme court of this state for a writ of certiorari or review for the purpose of having the unlawfulness of such decision inquired into and determined. Such writ shall be made returnable not later than thirty days after the date of the issuance thereof, and shall direct the tax commission to certify its record, which shall include all the proceedings and the evidence taken in the case to the court. Upon the hearing, no new or additional evidence may be introduced, but the case shall be heard on the record before the tax commission as certified to by it. The decision of the tax commission may be reviewed both

upon the law and facts and the provisions of the code of civil procedure of this state relating to appeals so far as applicable and not in conflict with this act apply to the proceedings in the supreme court under the provisions of this section."

Section 15: "No court of this state, except the supreme court, shall have jurisdiction to review, reverse, or annul any decision of the tax commission or to suspend or delay the operation or execution thereof; provided, that a writ of mandamus shall lie from the supreme court in all proper cases."

The title of chapter 20, Laws of Utah 1933, Second Special Session, reads as follows:

"An Act to Amend Sections 2, 4, 5, 6 and 21 and Repealing Sections 22 and 25 of Chapter 63, Laws of Utah, 1933, Known as the Emergency Revenue Act of 1933, Relating to Taxes Imposed Upon Certain Sales, Admissions and Services; Defining Terms; Providing for Exemptions; Requiring Remittances to be Made to the State Tax Commission; Conferring Powers to Enforce; Providing a Penalty for Violation; Relieving Certain Proprietors from Collecting or Remitting Certain Taxes on Admissions and Providing for Disposition of Revenue."

In the amendment of the original act by chapter 20 of the Second Special Session, subdivision (i) of section 2, defining the term "utility," was omitted. Section 4, subd. (b) thereof, was so amended as to provide that:

"From and after the effective date of this act there is hereby levied and there shall be collected and paid: * * *

"A tax equivalent to two (2) per cent of the amount paid: * * * to gas, electric, and heat corporations as defined by Section 76-2-1 of the Revised Statutes of Utah, 1933, whether such corporations are municipally or privately owned, for gas, electricity, or heat, furnished for domestic or commercial consumption."

Section 5 of the original act was amended by chapter 20 of the Second Special Session of 1933 by adding thereto this provision:

"The vendor may, if he sees fit, collect the tax from the vendee, but in no case shall he collect as tax an amount (without regard to frac-

tional parts of one cent) in excess of the tax computed at the rates prescribed by this act."

The other amendments of the original act made by chapter 20 of the Second Special Session of 1933 do not affect the questions presented for review on this appeal.

The demurrer attacks the complaint upon various grounds, among them, that the act under which the tax was levied is unconstitutional, in that it offends against article 6, §§ 2, 23, 26, and 29; also article 13, § 2, of the Constitution of the state of Utah. Apparently the city has abandoned its claim that the act is vulnerable to attack because it impinges upon section 2, art. 6, because that phase of the case is not argued.

It is provided in section 2 of article 6 that the sessions of the Legislature "shall begin on the second Monday in January next after the election of members of the House of Representatives." Article 7, § 6, provides that, "on extraordinary occasions, the Governor may convene the Legislature." It must be assumed for the purpose of this case that the Legislature was properly convened for its second special session, as nothing to the contrary is pointed out.

Article 6, § 23, of our State Constitution, provides that:

"Except general appropriation bills, and bills for the codification and general revision of laws, no bill shall be passed containing more than one subject, which shall be clearly expressed in its title."

The point is made that there is nothing in the title of the original act or the amendment thereto indicating that a sales tax was to be imposed upon municipalities within the state. It will be observed that both the original act and the amendment thereto indicate that the act is to provide for a tax to be imposed upon certain sales admissions, and services. The constitutional provision under review is not so exacting as to require the title of the act to indicate the particular persons or corporations who are required to pay the tax. The title of the original act and the title of

the amendment thereto are sufficient to bring them well within the rule announced by this court in such cases as *Ritchie* v. *Richards,* 14 Utah 345, 47 P. 670; *In re Monk,* 16 Utah 100, 50 P. 810; *Nystrom* v. *Clark,* 27 Utah 186, 75 P. 378; *Marioneaux* v. *Cutler,* 32 Utah 475, 91 P. 355; *Edler* v. *Edwards,* 34 Utah 13, 95 P. 367; *Salt Lake City* v. *Wilson,* 46 Utah 60, 148 P. 1104; *State* v. *Hammond,* 46 Utah 249, 148 P. 420; *Martineau* v. *Crabbe,* 46 Utah 327, 150 P. 301; *Mutart* v. *Pratt,* 51 Utah 246, 170 P. 67; *State* v. *McCornish,* 59 Utah 58, 201 P. 637; *State* v. *Olson,* 59 Utah 549, 205 P. 337; *Utah State Fair Ass'n* v. *Green,* 68 Utah 251, 249 P. 1016; *Baker* v. *Department of Registration,* 78 Utah 424, 3 P. (2d) 1082.

Section 26 of article 6 of the Constitution is directed against the Legislature enacting private or special laws. We are unable to perceive wherein a law which levies a tax on the sale of electrical energy without regard to whether the vendor is a public or private corporation offends against that provision of the Constitution. Indeed, if the act attempted to place a tax on consumers of electrical energy purchased from private corporations and not on consumers who purchased from a municipality, there would be serious doubts if such an act would withstand an attack upon the ground that it offends against the constitutional provisions of article 6, § 26.

Section 29 of article 6 provides that:

"The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions."

Article 13, § 2, exempts property owned by municipalities from taxation. In connection with the constitutional provisions which are relied upon by the city in support of its claim that the act under review is unconstitutional, atten-

tion is directed to section 12 or article 13, wherein it is provided that "nothing in this Constitution shall be construed to prevent the Legislature from providing a stamp tax, or a tax based on income, occupation, licenses or franchises." There are two reasons why the sales tax imposed by the act under review, and the amendment thereto, is not a tax upon the property of Logan City within the meaning of article 13, § 2, of the Constitution. By the terms of the act it is optional with the city whether it pays the tax upon the basis of the revenue derived from the sale of electrical energy or requires the consumer thereof to pay the same. In this connection it is argued on behalf of the city that it is unable to collect the tax from the consumer in an amount sufficient to pay 2 per cent of the total amount received by the city from the sale of electrical energy. It is argued that the city cannot collect a sales tax from a consumer who purchases electricity for a fractional part of 50 cents; that is to say, if the bill of any consumer is, say, 49 cents, no tax can be collected thereon, and likewise, if electrical energy in any given month is sold to a consumer in the amount of $1.25, a sales tax of only 2 cents is collectible thereon, and therefore, if the city is required to pay 2 per cent of its total sale, it will be required to pay a substantial part of the tax out of its own funds. Assuming, without deciding, that a vendor may not collect a sales tax on the fractional part of a 50-cent sale, still we doubt the soundness of the argument that the city may not readily devise means of passing the tax on to the consumer. It is a matter of common knowledge, of which we may take judicial notice, that most consumers of electrical energy are constant users. If in any given month or other fixed period when electric light bills are to be paid the amount of a given bill is not an exact multiple of 50 cents, we know of no reason why the amount upon which a tax is not paid during any given month or other period may not be taken into account in fixing the amount of the tax payable the following month. Whatever difficulty the city may have in such

respect, it is in the same position as are other vendors who are subject to the act. Assuming, without deciding, that the city is required to pay the sales tax, still such a tax may not be said to be a tax upon its property, and hence is not within the inhibition of the Constitution. The tax is, by the act, levied on the sale and not on the electrical energy, that is to say, so long as the city retains the ownership of the electrical energy generated by its power plant, it is not subject to the payment of the tax. The court in the case of *Crockett* v. *Salt Lake County,* 72 Utah 337, 270 P. 142, 60 A. L. R. 867, held that the state may impose a tax on gasoline used by a county and a city in carrying on governmental functions. If such a tax is not inhibited by the Constitution for much stronger reasons, may the state impose a tax upon sales of electricity made by a municipality while acting in its proprietary capacity?

Nor is the act under review inhibited by section 29, article 6. The only manner in which the act affects a municipality is that it casts upon the city the duty of collecting the tax and remitting the same to the state tax commission. The same requirement that is made of municipalities is also made of private corporations. That the law-making power of the state may, without offending against the State Constitution, impose upon municipalities and its officers, the duty of collecting and remitting taxes, is well established in this jurisdiction. *Board of Education of Cache County School District* v. *Daines,* 50 Utah 97, 166 P. 977; *Board of Education of Salt Lake City* v. *Burgon,* 62 Utah 162, 217 P. 1112; *Best Foods* v. *Christensen,* 75 Utah 392, 285 P. 1001. The law announced in the cases of *Salt Lake County* v. *Salt Lake City,* 42 Utah 548, 134 P. 560, and *Crockett* v. *Salt Lake County,* supra, also tend to support such doctrine. Neither the original act nor the amendment thereto is open to the constitutional objections urged against it.

The demurrer filed by the city questions the authority of the state tax commission to prosecute in its own name an

action for the collection of the sales tax. Article 13, § 11, of our State Constitution grants to the state tax commission supervision of the tax laws of the state. R. S. Utah 1933, 80-5-46, contains an enumeration of the general powers and duties of the commission. Power is there conferred upon the commission "to sue and be sued in its own name," and generally to supervise and direct the levy and collection of taxes. In the light of the fact that broad powers are conferred upon the commission to levy and collect taxes, it would seem idle for the Legislature to vest authority in the commission to sue in its own name unless it intended thereby that the commission might sue for the collection of taxes. Apparently one of the chief purposes of the Legislature in granting to the commission authority to sue was to enable it to enforce payment of taxes. The city's contention that the commission is without authority to prosecute this action in its own name must fail.

Another ground for the city's demurrer is that the complaint is ambiguous and uncertain, in that it cannot be ascertained therefrom whether the commission seeks to recover the taxes sued for under the provisions of chapter 63, Laws of Utah 1933, or under chapter 20, Laws of Utah 1933, Second Special Session, or partly under each of such acts, and, if partly under each act, the amount claimed to be owing under each. It is clear from the complaint that the commission by its action seeks to recover taxes claimed to be owing under chapter 63 from the time it took effect until it was amended, and likewise under chapter 20 from the time it took effect up to June 30, 1934. It is alleged in the complaint that the action is for taxes on the sale of electrical energy sold by the city for domestic and commercial consumption during the period beginning June 1, 1933, to and including the 30th day of June, 1934. We, however, know of no rule of pleading which requires the commission to separately state the amount of taxes that it claims is owing under the original act and the amount that it claims is owing under the amendment thereto.

There is, however, a serious question whether any sales tax at all may lawfully be levied on the electrical energy sold by the city prior to the amendment of the original act by chapter 20, Laws of Utah 1933, Second Special Session. It will be observed that section 4, subd. (b) thereof, provided that:

"From and after the thirty-first day of May, 1933, there is hereby levied and there shall be collected and paid: * * *

"A tax equivalent to three-quarters (¾) of one (1) per cent of the amount paid for all services rendered or commodities furnished for domestic or commercial consumption by any utility of the state of Utah."

Section 2, subd. (i), provides that: "The term 'utility' as herein used, shall be construed to mean any utility under the jurisdiction of the public utilities commission."

Prior to 1933, namely, on November 24, 1928, in the case of *Logan City* v. *Public Utilities Commission of Utah*, 72 Utah, 536, 271 P. 961, this court held that the Public Utilities Commission of Utah was without jurisdiction to fix rates to be charged for electricity generated by a municipally owned and operated power plant. That case did not go so far as to hold that the Public Utilities Commission is for any and all purposes without jurisdiction over municipally owned and operated power plants. We do not deem it advisable or necessary in the instant case to enlarge upon what was said in that case as to the jurisdiction, if any, of the Public Utilities Commission over municipally owned and operated electric power plants. Suffice it to say that it must be presumed the Legislature, when it enacted chapter 63, Laws of Utah 1933, knew that, so far as this court had spoken on the matter in hand, it had held that municipally owned power plants are not subject to the control or jurisdiction of the Public Utilities Commission. With that knowledge in mind, the Legislature limited the imposition of a sales tax to "services rendered or commodities furnished for domestic or commercial consumption by any utility of the state of Utah; * * * under the jurisdiction of the Pub-

lic Utilities Commission." It is a cardinal principle in the construction of legislative enactments that, when possible, effect must be given to all the language of the act being construed. Applying this principle to chapter 63, Laws of Utah 1933, subdivision (i) of section 2 thereof, we can see no escape from the conclusion that the Legislature did not intend to levy a sales tax on electrical energy generated and sold by municipalities. If the lawmaking power intended that all utilities should pay the tax, there was no occasion to limit utilities to those "under the jurisdiction of the Public Utilities Commission." That such was the intention of the Legislature when the original act was passed is, in a measure, borne out by the fact that by chapter 20, Laws of Utah 1933, Second Special Session, the same Legislature that passed the original act so amended it as to require the payment of a sales tax on electrical energy sold by all corporations without regard to whether the plant generating the same is municipally or privately owned. So construing the original act, as it must be, the City of Logan is not liable for the payment of any sales tax on electrical energy sold by it prior to the time chapter 20, Laws of Utah 1933, Second Special Session, took effect.

Although the commission may not recover for sales of electricity under chapter 63, Laws of Utah 1933, it does not follow that recovery may not be had under its present complaint for taxes on sales made by the city after chapter 20, Laws of Utah 1933, Second Special Session, became effective. Nor does the fact that by the allegations of its complaint the commission seeks to recover taxes over a longer period than it is entitled to render the complaint defective with respect to such taxes as may be found due and owing under chapter 20, Laws of Utah 1933, Second Special Session. It is alleged in the complaint that Logan City has sold electrical energy during the period beginning with June 1, 1933, to and including the 30th day of June, 1934, in such an amount as to make $1,921.50 in taxes owing thereon, and that none of such taxes have been paid. It is

further alleged that on or about June 4, 1934, the commission gave written notice by mail postpaid to the city requiring it to make return of its electric sales, but the city has failed, and still fails, to make such return; that the commission prior to the commencement of this action has made an examination of the books and records of the city; that from such examination and other available sources of information the commission itself has made a return of the sales of electricity sold by the city for domestic and commercial consumption during the period beginning June 1, 1933, and extending to and including June 31, 1934, which said return shows that the city is owing a tax in the sum of $1,921.50. It is further alleged that thereafter, on August 11, 1934, the commission

"filed its claim properly itemized in writing and duly attested by the Assistant Secretary of the State Tax Commission of Utah with the defendant showing the amount of the deficiencies in the tax due from the defendant, as aforesaid, and demanding the payment thereof. That more than 10 days have elapsed since the date of said claim and notice and the defendant has failed to pay said sums or any part thereof. That plaintiff deeming said deficiencies to have been due to the intentional disregard by the defendant of the requirements of said Emergency Revenue Act and of the authorized rules and regulations of the plaintiff, duly assessed a penalty against the said defendant in the sum of 10% of the amount of said deficiencies."

Judgment is prayed for in the sum of $1,921.50 in taxes, $192.14 penalties, and interest at 1 per cent per month in the amount of $113.91, or a total of $2,227.55.

It will be observed from the allegations of the complaint that the commission seeks to bring itself within the provisions of sections 8, 9, and 13 of chapter 63, Laws of Utah 1933. It is the commission's contention that, having complied with such provisions, its return and order fixing the amount of taxes owing by the city is final and not open to attack by the city; that the only way the city could have questioned the amount of the tax levied against it was to apply to this court for a review of the

decision of the commission within 30 days after notice thereof was given, as provided in section 14 of the act; that the city, having failed to apply for a review of the decision of the commission fixing the amount of the tax owing by the city within the time prescribed, is now forever barred from questioning the accuracy of the amount of the tax assessed against it. On the contrary, it is contended on behalf of the city that the act does not authorize the commission to make a return for the city; that chapter 63, § 9, Laws of Utah 1933, wherein it is provided that, upon the failure of any person to make returns "as provided herein," the commission may make return for him, does not apply to municipal corporations. We seriously doubt that the act when considered as a whole is susceptible of the construction contended for by the city. Section 5 of the act requires the city to make returns. If the expression "as provided herein" contained in section 9 is construed to mean as required by the act, obviously the contention of the city cannot be maintained. If, on the other hand, the expression "as provided herein" is limited in its application to the licensees mentioned in section 9 of the act, there is merit in the city's contention. It is well established that, when possible, courts will give an act such a construction as will accomplish the purposes sought by the act. Viewed in the light of the purposes sought to be accomplished by the act under review, it would seem that there is the same necessity for empowering the commission to make returns for nonlicensees as for licensees. Be that as it may, there is another reason why the city is not bound by the return made by the commission. As heretofore held in this opinion, the return made by the commission shows on its face that it covers sales of electrical energy made by the city during the period when the city was not liable for the payment of the sales tax. It was not until the amendment of the original act by the Second Special Session of the Legislature of 1933 that the city was brought within the class that is required to pay a sales tax. The commission being without authority to levy a sales tax against the city

prior to the time chapter 20, Laws of Utah 1933, Second Special Session, took effect, all proceedings taken by the commission with respect to making a levy on sales made before that time are a nullity. The return made by the commission for and on behalf of the city, and relied upon in this action, does not segregate the tax attempted to be levied under the original act from that levied under the amendment thereto. It follows that the return relied upon by the commission shows on its face that such return is in error, and hence not prima facie evidence of the amount of the tax. Under such a state of facts, the complaint is not aided by the allegations therein concerning the making of a return for the city and giving of notice thereof. The making of a return by the commission which shows on its face that it covers a period when the city was not liable for the collection or payment of a tax does not bind the city. Such a levy is a nullity and may be questioned at any time.

It is finally urged by the city that the complaint is fatally defective because it fails to allege that the commission, prior to the bringing of this action, presented to the city a verified claim as required by R. S. Utah 1933, 15-7-76 and 15-7-77. There is no merit to that contention. It is, by the act, made the duty of the city to make returns to the commission. There is no occasion for the commission to furnish the city with any information as to the nature and extent of its claim for taxes. The city, and not the commission, is, in the first instance, the source of that information. By legislative mandate the city is required to furnish that information so that the commission may require the city, or those using electricity generated by its plant, to carry their just proportion of the expenses of maintaining the state government.

If the complaint be viewed as an attempt to state a cause of action founded solely upon the return made by the commission, it is vulnerable to the attacks lodged against it by the city's demurrer. However, independent of the allegations touching the return made by the commission and the

notices given to the city, there are sufficient facts alleged in the complaint to state a cause of action against the city. Nor is the complaint ambiguous or uncertain in the particulars urged. The facts relied upon by the commission are alleged in ordinary and concise language. Some of the allegations do not aid the complaint, neither do they destroy the other allegations which in and of themselves state a cause of action. Section 11 of the act expressly authorizes the bringing of this action as and for a debt due the state.

The judgment appealed from is reversed. This cause is remanded to the district court of Cache county, with directions to reinstate the action, overrule the demurrer, and for such other and further proceedings not inconsistent with the views herein expressed as may be deemed proper. Appellant is awarded its costs.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.