UNION STOCK YARDS v. STATE TAX COMMISSION OF UTAH et al.

No. 5849. Decided September 14, 1937. (71 P. [2d] 542.)

*DeVine, Howell & Stine,* of Ogden, for plaintiff.

*Ned Warnock,* of Salt Lake City, for defendants.

FOLLAND, Chief Justice.

This is a review of a decision of the Utah State Tax Commission holding plaintiff liable for a sales tax on hay, grain, and straw fed by it to livestock in interstate shipments, plaintiff being under contract with interstate carriers. Plaintiff complains: (a) That the tax is an unlawful burden on interstate commerce repugnant to the Commerce Clause of the Constitution of the United States; and (b) that plaintiff's service is expressly exempt under the Sales Tax Law (Laws 1933, c. 63, as amended by Laws 1933, 2d Sp. Sess., c. 20). The decision of the Tax Commission must be sustained for reasons which will presently appear.

There is no conflict in the evidence, as the facts are all stipulated. Plaintiff is a corporation engaged at Ogden City in the business of unloading, feeding, watering, and reloading livestock in transit in interstate commerce as agent of interstate railroads operating in and through Ogden. There is a federal law known as the Twenty-Eight

Hour Law, 45 U. S. C. A. §§ 71-74, which prohibits the confining of livestock moving in cars in interstate commerce by a common carrier for more than twenty-eight consecutive hours without unloading into properly equipped pens for rest, water, and food for a period of at least five hours. The primary duty of feeding and resting livestock is with the shipper, but the carrier is subject to penalty if it fails to furnish proper facilities and opportunity for the unloading, feeding, and resting of the animals so moving in interstate commerce. Where this service is furnished by the carrier, there is a lien on the livestock for the cost thereof collectible at destination the same as transportation charges. Pursuant to contract with the carriers, plaintiff between June 1, 1933, and May 13, 1935, performed the services mentioned in numerous instances, the cost of all of which was added to the transportation costs of the livestock and collected at the destination with the transportation charges.

The State Tax Commission levied against plaintiff a tax on the value of the hay, grain, and straw furnished by plaintiff to livestock under such contracts. The tax levied includes a small amount assessed for the furnishing of hay, grain, and straw to livestock moving in intrastate commerce. The tax was imposed on the sales price of the feed alone and not on the value of the entire service rendered by plaintiff to the interstate carriers; that is, the Tax Commission did not levy any tax on the value of the service of loading, unloading, or use of the pens for the resting and watering of the animals. The shipments were all made to packers who butchered the livestock for sale to wholesalers who sold to retailers, who in turn sold to the ultimate consumers. The packers in the interstate shipments resided in other states, the intrastate consignees being packers in Utah. In the case of the interstate shipments, neither the shippers of the livestock nor consignees were citizens of Utah.

At the hearing before the Commission and in this court, plaintiff argued that the feed sold by it for consumption by the animals awaiting slaughter or being transported

toward slaughter pens in other states became component parts of the flesh and meat products of the slaughtered animal, which products were sold at retail in this or some other states.

It may be conceded without discussion that the livestock in question were in transit in interstate commerce and that the carriers provided for the feeding of such livestock by plaintiff pursuant to the Federal statute. 4 R. C. L. 983. The tax cannot be defeated because the feed sold is consumed by animals in the course of shipment in interstate commerce. The incidence of the tax is before the interstate commerce begins, as applied to the articles taxed. The Utah sales tax is a tax on a transaction. *State Tax Commission* v. *City of Logan*, 88 Utah 406, 54 P. (2d) 1197; *W. F. Jensen Candy Co.* v. *State Tax Commission*, 90 Utah 359, 61 P. (2d) 629, 107 A. L. R. 261. Here the hay, grain, and straw did not become a part of interstate commerce until after it had been fed to the livestock. The situation is analogous to that in the case of *Nashville, C. & St. L. Ry.* v. *Wallace*, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191, where gasoline purchased by the carrier outside of the State of Tennessee was brought into that state in tank cars, unloaded, and placed in carrier's own storage tanks. It was withdrawn and used by the carrier as motive power in interstate operations. The United States Supreme Court held that the gasoline on being unloaded and being stored ceased to be a subject of interstate commerce and lost its immunity as such from state taxation. The state tax was imposed on the withdrawal of the gasoline for use by the carrier. The principles of this case were reaffirmed in *Edelman* v. *Boeing Air Transport, Inc.*, 289 U. S. 249, 53 S. Ct. 591, 592, 77 L. Ed. 1155, in which case the distinction is drawn between a valid and an unconstitutional tax on the use of gasoline. The court there said:

"A state may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the state, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to gener-

ate motive power for carrying on interstate commerce. Such a tax cannot be distinguished from that considered and upheld in *Nashville, Chattanooga & St. Louis Ry.* v. *Wallace*, supra. There it was pointed out that 'there can be no valid objection to the taxation of the exercise of any right or power incident to * * * ownership of the gasoline, which falls short of a tax directly imposed on its use in interstate commerce deemed forbidden in *Helson* v. *Kentucky*, supra (279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683).' As the exercise of the powers taxed, the storage and withdrawal from storage of the gasoline, was complete before interstate commerce began, it was held that the burden of the tax was too indirect and remote from the function of interstate commerce, to transgress constitutional limitations."

In the instant case plaintiff relies on the decision of the Supreme Court in the case of *Helson* v. *Kentucky*, 49 S. Ct. 279, 279 U. S. 245, 73 L. Ed. 683. The distinction, however, is well pointed out by Mr. Justice Stone, speaking for the court in *Edelman* v. *Boeing Air Transport, Inc.*, supra:

"Despite the fact that the statute as applied is identical in operation with that sustained in *Nashville, Chattanooga & St. Louis Ry.* v. *Wallace*, supra, respondent contends that as the statute is written, the tax is one on the consumption of gasoline in propelling its airplanes in interstate commerce, invalid under *Helson* v. *Kentucky*, supra. In that case a Kentucky statute taxing the use of gasoline was applied to that purchased and placed in the tanks of a ferryboat outside the state for use in operating it in interstate commerce. The tax, which was levied only with respect to the gasoline consumed while the ferryboat was within the state, was held to be invalid as, in effect, a direct tax on the privilege of carrying on interstate commerce.

"But the officers of Wyoming, charged with the enforcement of the taxing statute, are giving no such application to it as was given to that in *Helson* v. *Kentucky*, supra, and it is not suggested that they will. All that has been done or threatened by them, under their interpretation of the statute, infringes no constitutional right of the complainant."

It is not contended that the hay, grain, and straw, before being used by plaintiff in feeding the livestock in question, had any interstate commerce status. We think it did not become a part of interstate commerce until after it was fed to the livestock. The tax was on the sale in this state and not on the use of these products in interstate commerce.

The contention is made that the tax is invalid because plaintiff is licensed and regulated by the United States Government. In *Puget Sound Stevedoring Co.* v. *State Tax Commission of Washington* (Wash.) 63 P. (2d) 532 (see same case on appeal to Supreme Court of U. S., 58 S. Ct. 72), the court held a business or occupational tax imposed by the state on plaintiff to be valid, although the business of plaintiff corporation was exclusively that of furnishing stevedoring; that is, a service of loading and unloading vessels engaged in interstate and foreign commerce. So, also, in *Federal Compress & Warehouse Co.* v. *McLean,* 291 U. S. 17, 54 S. Ct. 267, 78 L. Ed. 622, the plaintiff was a licensee under the United States Warehouse Act (7 U. S. C. A. § 241 et seq.). The court held such license did not confer immunity from state taxes. So here, the fact that plaintiff was licensed and under regulation of the Federal Government did not convert it into an agency or instrumentality of the government or confer immunity from payment of a state sales tax on provender sold by it to be used in interstate commerce. We think it no different from any other sale by a local merchant of articles to an interstate carrier, even though such articles are immediately attached to trains or busses for the purpose of engaging in or becoming a part of interstate transactions. The sale is complete within the state before the article commences its journey in interstate commerce.

Next, we consider whether or not the transaction taxed is within the exemption of subsection (f), § 2, chap. 20, Laws of Utah 1933, Second Special Session (page 36), which reads as follows:

"Each purchase of tangible personal property or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity which enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds or the container, label, or the shipping case thereof shall be deemed a wholesale sale and shall be exempt from taxation under this act.

"Each purchase of service as defined in Section 4(b) of this act by a person engaged in compounding and selling a service which is subject to tax under Section 4(b) of this act and actually used in compounding such taxable service shall be deemed a wholesale sale and shall be exempt from taxation under this act."

Section 4(b) of the act (page 37), referred to in such quotation, reads as follows:

"(b) A tax equivalent to two (2) per cent of the amount paid: (1) To common carriers * * * for all transportation * * * service; provided, that said tax shall not apply to intrastate movements of freight and express or to street railway fares."

The contention of plaintiff is that the purchase by the carrier of the service furnished by it is a transportation service actually used in compounding the service which the carrier is paid for, and is therefore, under the statute, a wholesale sale and exempt. There are two reasons why this argument is not sound. In the first place, it is only the sale of products which is taxed and not the service rendered in connection therewith. In the second place, interstate transportation service is not subject to the tax and therefore does not come within the provision of the statute. The argument is made that interstate movements of freight not being expressly exempt by the statute, as are intrastate movements, they are therefore subject to the tax under section 4(b).

It must be obvious that interstate movements of freight could not be made subject to a state tax no matter what the wording of the statute. This argument must necessarily fail.

Other reasons are urged which we shall discuss in the case of *Salt Lake Union Stock Yards* v. *State Tax Commission*, 90 Utah 166, 71 P. (2d) 538, handed down simultaneously herewith, since the arguments on such matters are there more elaborately presented than in this case.

The decision of the State Tax Commission is affirmed, with costs to defendant.

HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.