## SALT LAKE UNION STOCK YARDS v. STATE TAX COMMISSION OF UTAH et al.

No. 5876.   Decided September 14, 1937.   (71 P. [2d] 538.

H. A. *Smith* and *Geo. Y. Wallace,* both of Salt Lake City, for plaintiff.

*Ned Warnock,* of Salt Lake City, for defendants.

FOLLAND, Chief Justice.

In many respects the facts in this case are the same as in the case of *Union Stock Yards* v. *State Tax Commission* 93 Utah 174, 71 P. (2d) 542, decided herewith. This plaintiff is located at Salt Lake City and performs the same sort of service for interstate carriers in unloading, feeding, watering, resting, and reloading livestock as does the Union Stock Yards. So far as the tax is imposed on provender furnished by it to livestock in interstate transportation, the case is controlled by the decision in the Union Stock Yards Case.

This plaintiff, however, also furnishes the same sort of service and feed to livestock unloaded and fed for purpose of slaughter within a few days thereafter at a local packing plant. The transaction is not in interstate commerce. Does the statute impose the tax on these transactions in local commerce? Under the exemption contained in section 2(f), ch. 63, Laws Utah 1933, it is provided:

"(f) Each purchase of tangible personal property or service or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance, commodity or service, for use in such business shall be deemed a wholesale sale and shall be exempt from taxation under this act."

At the Second Special Session of the Legislature of 1933, the above section was amended by chapter 20 (page 36), as follows:

"(f) Each purchase of tangible personal property or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity *which enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds or the container, label, or the shipping case thereof* shall be deemed a wholesale sale and shall be exempt from taxation under this act.

*"Each purchase of service as defined in Section 4(b) of this act by a person engaged in compounding and selling a service which is subject to tax under Section 4(b) of this act and actually used in compounding such taxable service shall be deemed a wholesale sale and shall be exempt from taxation under this act."* (New matter in italics.)

The tax imposed in both cases was under each of these sections, the larger volume of business, however, being under the section as amended. In 1935 this section was again amended by adding thereto:

"and for the purposes of this act, poultry, dairy and other livestock feed, and the components thereof and all seeds and/or seedlings, are deemed to become component parts of the eggs, milk, meat and other livestock products, plants and plant products, produced for resale; and each purchase of such feed or seed shall be deemed a wholesale sale

and shall be exempt from taxation under this act." Section 2(f), ch. 91 (page 183), Laws Utah 1935.

After the amendment of 1935, no sales tax was imposed upon or attempted to be collected from plaintiff or others similarly situated. Plaintiff contends the statute meant the same from the beginning so far as exempting it from the tax is concerned and that the amendment of 1935 was not for the purpose of changing the meaning of the original act, but merely for the purpose of clarification or defining what was meant by the original section.

Section 2 of the first enactment merely exempted as a wholesale sale tangible personal property sold to persons engaged in the business of manufacturing or combining for sale, profit, or use, any article for use in such business. The purpose and effect of the first amendment is quite obvious. Under the original act all the purchases of the manufacturer, if for use in his business, were exempt from payment of the sales tax. Purchases of articles which were used or consumed and which did not go into the articles manufactured were not taxable. This was not in harmony with the sales tax theory that while the tax should not be exacted more than once, it should be paid at least once; hence the amendment, which exempted from payment of the tax any article, substance, or commodity which enters into and becomes an ingredient or component part of the product manufactured or compounded. Later it was undoubtedly brought to the attention of the Legislature that the State Tax Commission was insisting on the collection of the tax on sales of feed to persons engaged in the poultry, dairy, and livestock business, and that by natural processes such food when fed to the poultry and livestock became component parts of the eggs, milk, and meat which where later sold at retail. The amendment was then made that for the purpose of the act, poultry, dairy, and other livestock feed and the components thereof are deemed to become component parts of the eggs, milk, and other livestock products produced for sale and deemed wholesale sales and therefore exempt.

We cannot believe that all that is now found in section 2(f) was in the minds of the legislators and intended to be expressed by the first section 2(f) found in chapter 63, Laws Utah 1933. We readily concede, as contended by plaintiff, that the rule that it will be presumed the Legislature in adopting an amendment intended to make some change in the existing law (59 C. J. 1097) is subject to exceptions, and that an amendment to a statute is not necessarily an admission by the Legislature that the original statute did not cover the case and that an amendment may be made merely to express more clearly the original intention of the Legislature. *School Dist. No. 12 of Pondera County* v. *Pondera County*, 89 Mont. 342, 297 P. 498. However, it does not follow that the exception to the rule must necessarily be applied or that it is at all applicable to the statute before us. We are required to examine the legislative language to determine the scope and intent of the original and first amended acts. We are unable to conclude that the legislative intent as expressed in the original act was and continued to be that dairymen, poultrymen, and livestockmen should be exempt from payment of the tax on purchases made by them for use in their businesses of feed for their poultry or animals, because the feed became "manufactured or combined" into eggs, milk, or meat. It would have been quite easy for the Legislature to have used words to make its purpose effective had it so intended.

The original exemption applied only to persons engaged in the business of manufacturing or compounding for sale, profit, or use, any article, etc. These words cannot by any stretch of the imagination be said to cover the business of farming, dairying, or stock raising, particularly in a state such as this where, by common usage, each of these words has a rather definite meaning. Plaintiff is not in the business of either compounding or manufacturing. The first amendment is easily understood. It did not enlarge the classes to whom the exemption applied to include the business of farming, stock raising, dairying, or poultry

raising, but rather restricted the exemption to purchases by manufacturers and compounders where the purchased commodities entered into and became ingredients or component parts of the products which were manufactured or compounded.

The Legislature undoubtedly has the right to give an unusual or expansive meaning to words and expressions used by it restricted to the purposes of any of its enactments. This it has done by the amendment of 1935. It does not follow that such was the intention when the first act was adopted. We are required to give the words used their natural and ordinary meaning. The rule is well expressed in 25 R. C. L. 962, as follows:

"When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning."

As we read the statute of 1933 and the amendment of the Second Special Session of 1933, the language is plain and unambiguous and its meaning clear. It is only when we come to read the amendment of 1935 that any question can be raised as to whether the Legislature might not have intended, previous to the amendment, to exempt purchases of feed and seed made by farmers, stock raisers, poultrymen, and dairymen. It is more likely that the farmers and stockmen were entirely forgotten when the original act was passed and the exemption as to them inserted after they had been required to pay the tax and learned that manufacturers were exempt as to articles manufactured into a product sold at retail.

In any event, the Tax Commission had to administer the law as it was enacted and could not anticipate that the Legislature might either make further exemptions or attempt to give its language a different construction than ordinarily would appear. In this case we see no room for the argument that the Legislature intended to give

a definition retroactively to words used in a previous enactment. There is no language used in the 1935 amendment from which this can be inferred. It is clearly an attempt to extend the exemption to other classes of business than those of manufacturing and compounding.

Plaintiff attacks the validity of the amendment to the Emergency Revenue Act of 1933 by chapter 20 of Laws of Utah 1933, Second Special Session, p. 36, on the theory that the title to chapter 20 is not sufficiently broad to carry with it the purposes effected by the repeal of section 25 of the first act and the disposition of part of the revenue so raised for school purposes as provided in the amendment. The Emergency Revenue Act of 1933, ch. 63, Laws of Utah 1933, p. 112, bears the following title:

"An Act to Provide for the Raising of Revenue for Emergency Purposes by Imposing a Tax Upon the Retail Purchase of Certain Commodities, Admissions and Services and for the Ascertainment, Assessment and Collection of Said Taxes; to Provide for the Distribution of Said Revenue and to Provide Penalties for the Violation of the Terms of This Act."

The title of chapter 20, the amending act, reads as follows:

"An Act to Amend Sections 2, 4, 5, 6 and 21 and Repealing Sections 22 and 25 of Chapter 63, Laws of Utah, 1933, Known as the Emergency Revenue Act of 1933, Relating to Taxes Imposed Upon Certain Sales, Admissions and Services; Defining Terms; Providing for Exemptions; Requiring Remittances to be Made to the State Tax Commission; Conferring Powers to Enforce; Providing a Penalty for Violation; Relieving Certain Proprietors From Collecting or Remitting Certain Taxes on Admissions and Providing for Disposition of Revenue."

The point of the objection is that by repealing section 25, which limits the period the act should be in effect to April 1, 1935, unless sooner terminated by proclamation of the Governor, the emergency character of the act was changed into a permanent and general revenue statute of the state; that no intimation of the change was given in the title of the amendatory act; also, that the purpose of the amendatory

act as declared by its provisions was to provide money for the relief of the destitute and needy, while the amendment authorized the surplus over a definite fixed sum to go into the State District School Fund. We doubt that plaintiff is in a position to raise the last question, because there is no issue here with respect to any part of the revenue raised by the revenue act being diverted to the State District School Fund. For aught that appears in this record, all of the money so raised may be used for the relief of the destitute and the poor, notwithstanding the amendment provides that the surplus over a certain amount may go into another fund.

The title to an amendatory act is held sufficient if it refers by number to the section of the code or law to be amended and declares a purpose to amend the ▪ same. And if the amendatory act contains matter which might properly have been incorporated in the original act under its title, that is, germane to it, and identifies the original act and declares the purpose to amend or supplement it, the constitutional provision is sufficiently satisfied (Const. art. 6, § 23). *Edler* v. *Edwards,* 34 Utah 13, 95 P. 367.

Plaintiff cites and relies on *State ex rel. Umatilla County* v. *Hawks,* 110 Or. 497, 222 P. 1071, 1075, where it is said:

"Provisions of an amendatory act which are beyond the scope of the title of the act amended, and for that reason would have been void if they had been embraced in the earlier act, are likewise void when incorporated in the amendatory act."

Assuming, without deciding, that the Oregon case states the law, yet measured by any of these tests, the amendments sufficiently comply with the constitutional requirement. Section 25 is definitely mentioned in the title ▪ of the amendatory act, coupled with the declared intention to repeal that section. The act as amended by repeal of section 25 left a result which was well within the title of the first act. In other words, if the original act had left out section 25 and the act had become a law without limita-

tion as to its effective date, it would not have been inconsistent with or beyond the title which we have quoted above.

The same is true as to the purpose for which the fund was raised. The title of the original act is sufficiently broad to include the distribution of a portion of the revenue for school purposes. "To Provide for the Distribution of Said Revenue" is the language used. It does not restrict to one purpose or exclude another. This assignment must fail.

The decision of the State Tax Commission is affirmed, with costs to defendant.

HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.