## INTERMOUNTAIN TITLE GUARANTY CO.
## v. STATE TAX COMMISSION

No. 6707.   Decided October 23, 1944.   (153 P. 2d, 724.)

See 16 C. J. S. Constitutional Law, Sec. 149 [1] 50 Am. Jur. 186.

*Harry D. Pugsley*, of Salt Lake City, for plaintiff.

*W. L. Skanchy* and *Wayne L. Christoffersen*, both of Salt Lake City, for defendant.

WADE, Justice.

This proceeding is here to review a decision of the Utah State Tax Commission finding there is a deficiency of $408.17 due from plaintiff for taxes on total premiums received from title insurance policies issued by it.

No transcript of the proceedings in the hearing held before the commission has been filed, instead the plaintiff and the commission have entered into a stipulation of the facts adduced at the hearing and this has been filed as part of the record. From this stipulation it appears that plaintiff is a Utah corporation which has for more than ten years engaged in the title insurance business in Utah and other western states and has issued policies of title insurance on property located in Utah. During all this time it has regularly paid to the State of Utah a premium tax based on 20% of its total receipts paid by customers for the services rendered by the company in and for the issuance of title insurance policies. The company books show a division

of 80% of such receipts allocated to "Searching and Abstracting" and 20% to "Title Insurance." The company has agents in Utah other than in Salt Lake County and the standard agreement of the company is that 80% of the total premiums received from the customer will be paid these agents or agencies for services rendered in searching and abstracting the title, the remaining 20% being retained by the company to cover the insurance feature of the business. The company has its own abstracting and title research departments in Salt Lake, Ogden and Provo and retains for these departments 80% of the total premium received from the customer and remits only 20% to the general office for the title insurance feature of the business. The company's president testified that the cost of searching and examining titles amounted to 80% of the total premiums paid by customers and this was generally true in other states. This company has for more than ten years paid its premium tax on a basis of 20% of the total customers receipts. The tax commission has not assessed a deficiency for a period prior to 1939, but only from 1939 to 1941, inclusive.

It is plaintiff's contentions that prior to 1939 when the state legislature again amended Sec. 43-3-7, R. S. U. 1933, which is the section which deals with taxation of insurance companies, the tax commission had interpreted "gross premiums," as used in that section, to mean total customer receipts less the cost of searching and examining the titles, and that this interpretation was given this phrase to conform with the definition of that phrase in Sec. 9, Chap. 48, Laws of Utah 1937, now 43-14-9, U. C. A. 1943, wherein this phrase is so defined with reference to the title insurance companies. That the amendment of 1939 in changing the body of the act to read "total premiums" instead of "gross premiums" caused the tax commission to find a deficiency due and that this finding is error because the 1939 amendment is unconstitutional in that it violates Sec. 23, Art. VI of the Constitution of the State of Utah because it contains more than one subject.

Sec. 43-3-7, R. S. U. 1933, as amended in Chap. 40, Laws of Utah 1935, reads:

"All insurance companies engaged in the transaction of business in this state shall annually, on or before the thirty-first day of March in each year, pay to the state tax commission two and one-fourth per centum of the *gross amount of premiums* received on business in this state * * *." (Italics ours.)

In 1939, the state legislature again amended this section to read:

"All insurance companies engaged in the transaction of business in this state shall annually, on or before the thirty-first day of March in each year, pay to the state tax commission two and one fourth per centum of the *total premiums* received from insurance covering property or risks located in this state * * *." (Italics ours.)

The titles of the amendments of 1935 and 1939 of Sec. 43-3-7, R. S. U. 1933, are identical except that the amendment of 1935 refers to amending Sec. 43-3-7, R. S. U. 1933, and the amendment of 1939, which is Chap. 55, Laws of Utah 1939, contains in addition a reference to the 1935 amendment. These titles read:

"Taxation of Insurance Companies.

"An Act to Amend Section 43-3-7, Revised Statutes of Utah, 1933, Relating to the Annual Statement and Tax of Insurance Companies; Providing That All Insurance Companies Licensed to Transact Business in This State Shall Be Required to File an Annual Statement of *Gross Premiums* and Be Required to Pay a Tax Thereon." (Italics ours.)

Plaintiff contends that inasmuch as the 1939 amendment provides for taxation based on total premiums whereas the title of that amendment refers to a requirement of a statement by insurance companies on "gross premiums," that portion of Sec. 23, Art. VI, of the Constitution [1, 2] of the State of Utah which provides that "* * * no bill shall be passed containing more than one subject, which shall be clearly expressed in its title," is violated,

especially since "gross premiums" as applied to title insurance companies has been defined by the legislature in Sec. 9, Chap. 48, Laws of Utah 1937, to be the total amount collected for a policy less the cost of making the search and examination of the title. Plaintiff argues that in view of the above the change in the body of the 1939 amendment to read "total premiums" when the title refers to "gross premiums" is a fatal variance in the subject matter, unless "total premiums" is construed to mean "gross premiums" as defined in Sec. 9, Chap. 48, Laws of Utah 1937, now 43-14-19, U. C. A. 1943. We find no merit to this contention. This court had decided numerous times that if the amendatory act refers by the number to the section of the law to be amended and declares that it is being amended, the constitutional provision is satisfied, as long as the amended act contains subject matter which could have been included in the original act under its title. See *Edler* v. *Edwards*, 34 Utah 13, 95 P. 367; *Salt Lake City* v. *Wilson*, 46 Utah 60, 148 P. 1104; *State* v. *McCornish*, 59 Utah 58, 201 P. 637; *Salt Lake Union Stock Yards* v. *State Tax Commission*, 93 Utah 166, 71 P. 2d 538. The subject matter of Sec. 43-3-7, is taxation of insurance companies. It is self-evident and needs no argument that the change made by the legislature in 1939 whereby the tax is based on total premiums received from insurance rather than on gross premiums on business done by the insurance companies is germane to the subject of the title and does not violate the prohibition of Sec. 23, Art. VI, of the Constitution against dual subjects being contained in one bill.

Plaintiff further contends that because of the peculiar nature of title insurance business which makes it necessary for 80% of the total customer receipts to be expended on title search and examination, Sec. 43-3-7, Laws of Utah, 1939, requiring the tax to be on total premiums, should be interpreted to mean the same as "gross premiums" as defined in Sec. 9, Chap. 48, Laws of Utah

1937, now 43-14-9, U. C. A. 1943, because any other interpretation would be confiscatory. This section reads:

"Every title insurer shall annually set aside ten per cent of its gross premiums as a reserve fund. Such sums shall be allowed to accumulate until a fund is created equal in amount to twenty-five per cent of the aggregate of the subscribed capital stock of the insurer. Such fund shall be known as the 'title insurance surplus fund' and shall take the place of the reserve fund referred to in section 43-3-14, Revised Statutes of Utah, 1933. Gross premiums as *herein* referred to shall consist of the total amount collected for the policy less the cost of making the search and examination of the title." (Italics ours.)

It is apparent that the definition of "gross premiums" as used in the foregoing section refers to the fund which is the subject matter of this section and is not meant to be a general definition of the term "gross premiums" as applied to title insurance companies. The wording of Sec. 43-3-7, as amended in 1939, is plain and unambiguous. It requires a tax on *total* premiums. Total is defined in Webster's New International Dictionary as: "Comprising or constituting a whole; whole; undivided; lacking no part; entire; * * *."

The fixing of tax rates is a legislative function and not that of this court. We cannot subscribe to plaintiff's contention that the rate as fixed is confiscatory, especially in view of the provision in Sec. 43-3-7, that:

"The taxes and fees as provided herein shall be in lieu of all other state, county and municipal licenses and fees of every kind and character."

The decision of the tax commission is affirmed. Cost to defendant.

WOLFE, C. J., and McDONOUGH and TURNER, JJ., concur.

LARSON, Justice (concurring in part, dissenting in part).

I concur in the holding that Chap. 55, Laws of Utah 1939, amending Sec. 43-3-7, R. S. U. 1933, as amended by Chap. 40, Laws of Utah 1935, does not offend against Sec. 23 of Article VI of the state constitution which provides that

"no bill shall be passed containing more than one subject, which shall be clearly expressed in its title."

I dissent from that part of the opinion which holds that Chap. 40, Laws of Utah 1939, which is Sec. 43-3-7, U. C. A. 1943, imposes a tax of two and one-fourth percentum on the full amount paid to the plaintiff by its patrons who purchase title insurance. I think that the wording of the section plainly and unambiguously requires the very opposite conclusion from that reached in the prevailing opinion. Let us note the wording of the section prior to the amendment, and also the section as amended. Sec. 43-3-7 as amended by Chap. 40, Laws of Utah 1935, reads:

"All insurance companies engaged in the *transaction of business* in this state shall annually, on or before the thirty-first day of March of each year, pay to the state tax commission two and one-fourth per centum of the *gross amount* of premiums received on *business* in this state, * * * less the amount of all premiums returned to policy-holders * * *." (Italics added.)

As amended in 1939, now Sec. 43-3-7 U. C. A. 1943, it reads:

"All insurance companies engaged in the *transaction of business* in this state shall annually, on or before the thirty-first day of March of each year, pay to the state tax commission two and one fourth per centum of the *total* premiums received from *insurance covering property* or *risks* located in this state * * * less the amount of all premiums returned to policyholders on *direct business* in this state and premiums received for *reinsurance of such property or risks* * * *." (Italics added.)

It is interesting to note that the 1935 act based the tax on *gross premiums* received on *business done* in the state, while the 1939 act bases the tax on *total premiums* received for *insurance covering property risks.* We must assume that the change in language was made intentionally and for a purpose. From the very nature of the language changes it seems indisputable that the purpose was to make clear that the tax was to be based upon receipts from *insurance risks,* and not upon receipts of *all business done,* which was

the language of the prior act. This position is reinforced by the fact that there is to be deducted from the *insurance risks* receipts before tax computation "premiums returned to policyholders on direct business" [that must mean direct property risk insurance] and also "premiums received for *reinsurance* of such *property or risks*," which can only mean premiums received from other insurance companies, which reinsure their risks with the company whose tax is being computed. In other words premiums received where the company acts merely as a reinsurer for the benefit and protection of the original insurer are not to be counted as receipts from property risks for figuring the tax. Such receipts are not considered receipts from business done in Utah by virtue of its Utah franchise. A company need not have a Utah franchise in order to reinsure for the benefit and protection of another insurer franchised to do business in Utah. Such insurance is not *"direct business"* in this state; it is not written for the benefit of the insured, but for the protection of the insurer. It is written not to protect against property risks, but against a business risk resulting from an act of possible overinsurance. Certainly the language "insurance of property risks" in the last section quoted above providing for deductions of premiums for "reinsurance of property risks" has the same meaning as "insurance covering property risks," where it speaks of total premiums.

The prevailing opinion overlooks this language and the significant difference in this regard between the 1935 and 1939 act, and bases its conclusions upon the use of the word "gross" premiums in the one act and the word "total" premiums in the other act. I think that the two words, "gross" and "total" are interchangeable and have the same meaning. Such too is the holding of the cases. Let us note a few. The California constitution imposed a franchise tax upon insurance companies based upon "the *gross premiums* received upon its *business done* in this state * * *." Art. XIII, Sec. 14 (b) Cal. Const. (Italics added.) In *Equitable Life* v. *Johnson,* 53 Cal. App. 2d 49, 127 P. 2d 95,

99, the court said: "But it seems equally clear that it was the intent of the constitutional provision to tax all receipts that could reasonably be classified as 'premiums.'" Again it says, "it imposes a tax on every insurance company doing business in this state, and the tax is imposed upon the 'gross premiums received upon its *business done* in this state * * *'—not upon gross premiums on its life insurance business done in this state." (Italics added.) Let us digress to note that our 1935 act imposed the tax upon gross premiums, received from *business in this state,* substantially the language of the California constitution. And in *Western Travelers Acc. Ass'n* v. *Johnson,* 14 Cal. App. 2d 306, 58 P. 2d 206, it was held that "gross premiums" meant total premiums. The South Carolina statute levied the tax upon the *"total premium receipts* from the State * * *." (Italics added.) In *Jefferson Standard Life* v. *King,* 165 S. C. 219, 163 S. E. 653, 654, the court calls this the "gross annual premiums" and quotes from other cases all of which use the two terms interchangeably. In *State* v. *Hibernia Ins. Co.,* 38 La. Ann. 465, the court says that in using the term "gross amount of premiums" the law refers to premiums received and earned. In *Connecticut Mutual Life Ins.* v. *Commonwealth Mut. Life Ins. Co.,* 128 Ky. 174, 107 S. W. 802, 803, the court had under consideration the Kentucky statute fixing the tax on "all premiums receipted for on the face of the policy * * * and all renewal * * * on business done in this state," and held that the company was liable only on the amount actually collected for the risks assumed and not on overcharges. And in *State* v. *Wilson,* 102 Kan. 752, 172 P. 41, it was held that a tax upon all premiums received on business done in the state for insurance of life, etc. does not include that portion of the charges over and above the actual cost of the insurance. It also points out that "gross," "all," "entire" and "total" mean the same things, and distinctions cannot be based thereon.

In 26 R. C. L. 187, we read that where a statute authorizes an assessment or tax on the gross annual premiums collected by the insurance company it is generally construed to refer

to money actually *collected and used for insurance purposes* and not to include fixed premiums, but the difference between the fixed premium and the actual cost of insurance. In *New York Life Ins.* v. *Burbank,* 209 Iowa 199, 216 N. W. 742, 744, it was held that the term *"gross* amount of premiums received" by a corporation for *business done* in the state in a statutory provision for a tax on such gross amount, meant the *total* amount of premiums. In *New York Life* v. *Wright,* 31 Ga. App. 713, 122 S. E. 706, it was held that "all premiums" and "gross receipts" of insurance companies were the same. It was further held that the word "premiums" was to be given the construction placed upon it by ordinary usage, and payment of which the company could exact as a condition precedent to keeping the policy alive, the maximum table rate premium stipulated in the policy. In *Massachusetts Bonding & Ins. Co.* v. *Chorn,* 247 Mo. 15, 201 S. W. 1122, 1124, the court was called upon to consider a Missouri statute levying upon insurance companies a percentage franchise tax based upon premiums received in the state or business done in the state. The court said:

"The thing taxed in this case is the right to transact the *business of various kinds of so-called insurance.* * * * The payment of the tax entitled it * * * to transact *this business* in its capacity as a corporation."

It proceeds to say this is a tax upon the insurance business done in the state. It points out that the Missouri tax is a tax upon the *"business done"* and not upon the *"insurance furnished."* Such seems to have been the provision of our 1935 act, which in 1939 was changed to tax premiums received from "insurance covering property or risks," which is equivalent to "insurance furnished."

In the case of *Fire Ass'n of Philadelphia* v. *Love,* 101 Tex. 376, 108 S. W. 158, 159, the statute fixed the tax upon the "gross amount of premiums received in this state, upon property located in this state." The court says:

"When the premium is received by the insurance company, it has transacted the business for which it is licenced * * *. The whole purpose and object of ascertaining the amount of premiums received is to fix the value of the privilege granted."

Of course this privilege is that of writing insurance. The case also holds there is no difference in the use of the words "gross" and "total." They mean the same thing.

It seems therefore that the position now taken by the tax commission *might* have been sustained under the 1935 Act (which is doubtful and not decided) because that tax was on *business done,* while the 1939 act is expressly based on "insurance received covering property risks."

The prevailing opinion also refers to the fact that the statute says:

"The taxes and fees as provided herein shall be in lieu of all other state, county and municipal licenses and fees of every kind and character."

Clearly and palpably that refers to licenses and fees governing the matter and field licensed by the state for such tax and fee, to wit: the right to transact the business of insurance in the state. It does not cover the right to do an abstract business, a real estate business, a growers' market, nor a clothing store. It is a license to do an insurance business.

I see no escape from the conclusion that the tax should be levied only on the premiums charged for the insurance risks. I therefore dissent.